UNITED STATES of America,
Plaintiff–Appellee,

v.

Grace A. ANGLIN, Defendant–
Appellant.

No. 99–10386.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 17, 2000.

Filed June 7, 2000.

Stephen P. Pingree, Honolulu, Hawaii, for defendant-appellant.

Leslie F. Osborne, Assistant United States Attorney, Honolulu, Hawaii, for plaintiff-appellee.

Before: SNEED, SCHROEDER, and TASHIMA, Circuit Judges.

SNEED, Circuit Judge.

Grace A. Anglin pleaded guilty to a single count of conspiracy to impede the United States in the ascertainment and collection of taxes. 18 U.S.C. § 371; 26 U.S.C. § 7202. She now claims in this appeal that the district judge misapplied the United States Sentencing Guidelines ("U.S.S.G."). In particular, she disputes a vulnerable victim enhancement, *see* U.S.S.G. § 3A1.1, and the district court's refusal to depart downward on the basis of ill-health,[1] *see* U.S.S.G. §§ 5H1.1 and 5H1.4. Alternatively, she contends that the record is well-enough developed for this court to determine on direct appeal that she received ineffective assistance of counsel. *See generally United States v. Andrews*, 75 F.3d 552, 557 (9th Cir.), *cert. denied*, 517 U.S. 1239, 116 S.Ct. 1890, 135 L.Ed.2d 183 (1996) (noting the hesitancy of this court to consider ineffective assistance claims on direct appeal). We have jurisdiction pursuant to 28 U.S.C. § 1291.

Because we conclude, first, that Anglin has "knowingly and voluntarily" waived her right to raise these issues in this forum, and, second, that the government did not violate her plea agreement, we dismiss her appeal.[2]

1. Anglin, 67, appears to suffer from a number of unfortunate medical conditions, including hypertension, anxiety disorder, osteoarthritis, diverticulosis, and a condition known as "Schatzki's Ring" which makes her susceptible to choking. She also has cataracts in both eyes.

### BACKGROUND

In 1998, a grand jury for the District of Hawaii indicted Anglin and members of her family on several counts of conspiracy to impede the United States in the ascertainment and collection of taxes. 18 U.S.C. § 371; 26 U.S.C. § 7202. The charges stemmed from their participation in the family's business, Aukaina, Inc. ("Aukaina"), on the island of Molokai. After pleading guilty to a single count, Anglin was sentenced to (1) a prison term of 12 months and one day, and (2) three years of supervised release to commence following her expected discharge in mid-June 2000.

Anglin's numerous admissions in the plea agreement and during the district court proceedings establish the relevant facts. She served as an officer of Aukaina from January 1, 1991 through January 31, 1993. In this capacity, she participated in the day-to-day operations of the company, maintained salary records, and issued payroll checks to employees. Although she and her co-defendants withheld federal payroll taxes from the employees' wages, they failed to remit any of the withholdings to the I.R.S. from April 30, 1991 through January 31, 1993. Nonetheless, Anglin told her employees that their payroll taxes had been properly accounted for and paid. Having no reason to doubt her credibility, the employees believed and relied upon these misrepresentations. In truth, Anglin and her co-defendants diverted the withholdings to her checking account or to the use of Aukaina.

### DISCUSSION

Anglin argues that she did not waive her right to appeal because her plea agreement was internally inconsistent, *i.e.*, it both waives and preserves her right to

2. To be clear, our decision does not prohibit Anglin from asserting an ineffective assistance of counsel claim, to whatever extent she can, in a 28 U.S.C. § 2255 habeas proceeding. Her plea agreement simply bars the claim in this direct appeal.

appeal. Alternatively, she contends that we should release her from the agreement because the government violated the terms. We deny both claims.

### 1. Anglin's Waiver Was "Knowing and Voluntary."

There is no constitutional right to appeal. *See Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983). A prospective appellant must therefore find the right in an applicable statute. *See Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977). This court regularly enforces "knowing and voluntary" waivers of appellate rights in criminal cases, provided that the waivers are part of negotiated guilty pleas, *see United States v. Michlin*, 34 F.3d 896, 898 (9th Cir.1994), and do not violate public policy, *see United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996) (cataloguing public policy exceptions, all of which are inapplicable to this appeal). Such waivers usefully preserve the finality of judgments and sentences imposed pursuant to valid plea agreements. *See Baramdyka*, 95 F.3d at 843.

Whether a particular waiver was made "knowingly and voluntarily" is a determination we make de novo. *See id.* In so doing, we look to the circumstances surrounding the signing and entry of the plea agreement. *See United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir.1991). Also relevant is whether the district court informed the defendant of her appellate rights and verified her intent to forfeit them. *See United States v. Navarro–Botello*, 912 F.2d 318, 321 (9th Cir.1990); *but see Michlin*, 34 F.3d at 898 (holding that a plea colloquy pursuant to Federal Rule of Criminal Procedure 11 is not a prerequisite for a valid waiver of appellate rights when a plea agreement expressly waives the appellate rights). The scope of a knowing and voluntary waiver is demonstrated by the express language of the plea agreement. *See Baramdyka*, 95 F.3d at 843.

Anglin's plea agreement purports to make the following waiver of her appellate rights:

13. The [D]efendant is aware that she has the right to appeal the sentence imposed under Title 18, United States Code Section 3742(a). The [D]efendant *knowingly waives the right to appeal,* except as indicated in subparagraph "b" below, any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined on any of the grounds set forth in Section 3742, or on any ground whatever, in exchange for the concessions made by the prosecution in this plea agreement.

a. The Defendant also waives her right to challenge her sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the [D]efendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

b. If the Court in imposing a sentence departs (as that term is used in Part K of the Sentencing Guidelines) upward from the guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal the upward departure portion of her sentence and the manner in which that portion was determined under Section 3742 and to challenge that portion of her sentence in a collateral attack.

Plea Agreement at 8–9 (emphasis added). However, in the next subparagraph the agreement contradicts itself:

c. The Defendant also retains the right to appeal under Section 3742 the court's determination.

*Id* at 9.

Thus, the question is whether this contradiction preserves Anglin's right

to bring the merits of her appeal before this court. Plea agreements are generally construed according to the principles of contract law, *see United States v. Johnston*, 199 F.3d 1015 (9th Cir.1999), and the government, as drafter, must be held to an agreement's literal terms, *see generally United States v. Baker*, 25 F.3d 1452, 1458 (9th Cir.1994) (noting that the government "ordinarily must bear responsibility for any lack of clarity" in a plea agreement).

However, this is not the run-of-the-mill case in which a plea agreement incorporates ambiguous words. *See generally United States v. De la Fuente*, 8 F.3d 1333, 1337–38 (9th Cir.1993) (describing an "ambiguous" plea agreement as one in which the drafter's "vague words" were susceptible to two conflicting interpretations). Our examination of section 13 and Anglin's plea hearing reveals a carefully negotiated waiver of appellate rights. After spelling out the boundaries of this waiver in the early portions of section 13, the government simply failed to follow its usual practice and delete the boilerplate contents of subparagraph "c." We agree with the government that in context the subparagraph reads like an introductory phrase without any grounds for appeal set out or reserved. It is clearly and explicitly inconsistent with the well-developed waiver embodied in the three prior paragraphs. Its presence in the agreement was clearly a mistake.

During a thorough Rule 11 plea colloquy, the government carefully summarized the plea agreement in front of Anglin and her attorney. *See* FED. R. CRIM. P. 11(c). The summary incorporated the waiver in section 13, but omitted the contradictory language of subparagraph "c." When the judge asked if she understood these terms, Anglin responded, "Yes, Your Honor." Immediately thereafter, the court confirmed Anglin's understanding by asking, "Other than that [*i.e.*, if the sentence were higher than what the guidelines provided or if Anglin wanted to file a 28 U.S.C. § 2255 motion alleging ineffective

assistance of counsel] you would be waiving any right of appeal?" Anglin replied, "Yes." Thus, the colloquy indicates a knowing and voluntary waiver at the time Anglin entered her plea. *See De la Fuente*, 8 F.3d at 1338 & nn. 7–8 (noting that this court construes a plea agreement by what the defendant reasonably understood to be the plea agreement's terms when the defendant pleaded guilty).

Nonetheless, Anglin insists that she and the district court were never "on the same page" because the district court "consistently referenced" the self-contradictory plea agreement during the colloquy. This is clearly not so. The district court did not merely reference the agreement. Rather, it stated in thorough detail the nature and extent of the waiver. The colloquy was in no way self-contradictory.

In this circuit we place a premium on a defendant's ability to trust a district court's statements about the right to appeal. *See United States v. Buchanan*, 59 F.3d 914, 917–18 (9th Cir.1995). Giving this kind of weight to a district court's statements about waiver can cut both ways. In *Buchanan*, we held that the oral pronouncements of a district court advising a defendant of his right to appeal control over written waivers of that right. *See id.*; *cf. United States v. Schuman*, 127 F.3d 815, 817 (9th Cir.1997) (a district court's stated uncertainty on the issue of waiver did not preserve the defendant's right to appeal when the right was expressly waived in the plea agreement). Here, the court clearly and repeatedly advised Anglin how her plea agreement waived her appellate rights. Anglin then clearly and repeatedly acknowledged the waiver. We hold without reservation that she acted knowingly and voluntarily. *See Navarro–Botello*, 912 F.2d at 321.

2. *The Government Did Not Violate the Plea Agreement.*

Alternatively, Anglin claims that the government violated the plea agreement and that she should therefore be

allowed her appeal. We apply de novo review, *see Schuman*, 127 F.3d at 817, and reject her argument.

▮ The government pledged in the agreement not to "seek an upward adjustment of the sentence predicated upon the vulnerable victims or sophistication of the offense role." Plea Agreement at 7. It honored its promise. The prosecution said at the outset of Anglin's sentencing hearing, "[T]he government specifically stated it would not seek a victim-related adjustment in this situation, and so, therefore, I feel that I cannot comment one way or the other." Tr. of Anglin's Sentencing Hr'g at 6. In our view, the probation officer was the first and only party to suggest that Anglin's sentence should include the adjustment.

While the prosecution eventually did tell the court that the Aukaina employees were the "true victims" of Appellant's crime, it did not do so until *after* the court had already decided to apply the vulnerable victim adjustment. *Id.* at 17. The government clearly was attempting to spur the court toward a higher sentence within the already-calculated range.[3] Nothing in the plea agreement restricted the government's right to argue for the highest possible sentence, even though the range might include a vulnerable victim adjustment. Further, Anglin understood that the court was free to adjust her sentence in any lawful way. *See* Plea Agreement at 9; *United States v. Lewis*, 979 F.2d 1372, 1375 (9th Cir.1992) (noting that a court is not a party to a plea agreement).

There is no evidence of a conspiracy between the prosecution and the probation officer to recommend the adjustment. We hold that the adjustment was included because the probation officer independently thought it warranted. Affirming Anglin's waiver does not amount to relieving the government of its promise not to seek the

adjustment. The adjustment was never sought; it was freely given.

### CONCLUSION

The government's failure to remove from a plea agreement boilerplate language that reserves a defendant's right to appeal her conviction does not necessarily vitiate other language in the plea agreement that clearly waives that right. The sole test of a waiver's validity is whether it was made knowingly and voluntarily. *See Michlin*, 34 F.3d at 898. Here, the record proves that Anglin's waiver is valid. It shows that the parties did not intend to include in the plea agreement language reserving all of her appellate rights.

Anglin's sentence of 12 months and one day was within the applicable range. By the terms of her unviolated plea agreement, excluding the inconsistent subparagraph "c", she has no ground for a direct appeal to this court. To hold differently would reduce the district judge's careful colloquy to a nullity and improperly ignore Anglin's reasonable understanding at the time she entered her guilty plea. The appeal is DISMISSED.

---

**3.** This attempt was unsuccessful. The court sentenced Anglin to the minimum term possi- ble given her total offense level of 13.