# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

v.

DOMINGO JACOBO CASTILLO,
     *Defendant-Appellant.*

No. 05-30401

D.C. No.
CR-04-02157-FVS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Fred L. Van Sickle, Chief District Judge, Presiding

Argued and Submitted En Banc
March 21, 2007—San Francisco, California

Filed July 25, 2007

Before: Mary M. Schroeder, Chief Circuit Judge,
Harry Pregerson, Stephen Reinhardt, Pamela Ann Rymer,
Sidney R. Thomas, Susan P. Graber, Kim McLane Wardlaw,
William A. Fletcher, Raymond C. Fisher, Ronald M. Gould,
Richard A. Paez, Marsha S. Berzon, Jay S. Bybee,
Consuelo M. Callahan, and Milan D. Smith, Jr.,
Circuit Judges.

Opinion by Judge Bybee;
Dissent by Judge Callahan

8995

**COUNSEL**

David M. Porter, Federal Public Defenders, Sacramento, California, for the defendant-appellant.

Dawn M. Reynolds, Law Offices of Dawn M. Reynolds, Dallas, Oregon, for the defendant-appellant.

Jill Bolton, Office of the United States Attorney, Spokane, Washington, for the plaintiff-appellee.

---

## OPINION

BYBEE, Circuit Judge:

We granted en banc review in this case to resolve a question to which we have given inconsistent answers: Do we have jurisdiction to hear an appeal when the defendant entered a guilty plea in which he waived his right to appeal? Domingo Jacobo Castillo pled guilty to one count of being an illegal alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5). Notwithstanding his guilty plea, Jacobo Castillo appealed his conviction. The government failed to raise the plea or his plea agreement as a bar to this appeal and instead responded to Jacobo Castillo's arguments on the merits. A divided panel dismissed the appeal for lack of jurisdiction. *United States v. Jacobo Castillo*, 464 F.3d 988 (9th Cir. 2006), *reh'g en banc granted*, 473 F.3d 1264 (9th Cir. 2007).

Our cases offer two different views of the question whether we have jurisdiction under these circumstances. In one line of cases, we have held that "we do not have jurisdiction over the merits of appeals based upon pre-waiver constitutional defects," and "we must dismiss that portion of the appeal." *United States v. Reyes-Platero*, 224 F.3d 1112, 1115 (9th Cir. 2000); *see also United States v. Floyd*, 108 F.3d 202, 204 (9th Cir. 1997) ("Unless [the appellant's] plea conformed with [Rule 11(a)(2)'s] specific requirements, we have no jurisdiction to hear her appeal."); *United States v. Carrasco*, 786 F.2d 1452, 1453-54 (9th Cir. 1986) ("We do not have jurisdiction to decide [the appellant's] appeal of the denial of the suppres-

sion motion unless she entered a valid conditional plea.”
(footnote omitted)). On the other hand, we have treated plea
agreements as a waiver of the right to appeal that “does not
divest the Court of jurisdiction it otherwise enjoys,” *United
States v. Doe*, 53 F.3d 1081, 1082 (9th Cir. 1995), because
“the government can waive the waiver,” *United States v.
Garcia-Lopez*, 309 F.3d 1121, 1122 (9th Cir. 2002); *see also
United States v. Lopez-Armenta*, 400 F.3d 1173, 1175-77 (9th
Cir.) (discussing the plea bar as waiver), *cert. denied*, 126
S. Ct. 199 (2005); *United States v. Anglin*, 215 F.3d 1064,
1066 (9th Cir. 2000) (discussing the appeal bar as a waiver);
*United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir. 1991)
(noting that a guilty plea functions as “an express waiver of
the right to appeal”); *United States v. Lewis*, 798 F.2d 1250,
1250 (9th Cir.) (holding that when “the government fail[s] to
raise [the question of waiver] in its brief or at oral argument,
we decline to address it”), *amending* 787 F.2d 1318 (9th Cir.
1986). We have even blended the two positions. *See Reyes-
Platero*, 224 F.3d at 1114 (“The government argues that
Reyes-Platero waived these arguments by unconditionally
pleading guilty. The implication of the government’s argu-
ment is that we do not have jurisdiction . . . .”).

We now hold that a valid guilty plea does not deprive the
court of jurisdiction and remand to the panel for further pro-
ceedings.

I

Jacobo Castillo was indicted in November 2004 on a single
count of being a felon in possession of a firearm in violation
of 18 U.S.C. § 922(g)(5). In February 2005, Jacobo Castillo
moved to suppress the firearm found during an earlier search
of his residence in conjunction with an investigation into a
robbery in which he was implicated. Jacobo Castillo sought
to suppress the evidence, arguing that the police failed to
show probable cause that the firearm used in the robbery,
which had occurred six months earlier, would be located in

the house to be searched. The district court denied the motion, and Jacobo Castillo entered into a plea agreement.

The plea agreement specified that the government would not file additional charges against him, would recommend a two-level downward departure for acceptance of responsibility, and that the term of imprisonment would run concurrently with a sentence imposed following a related conviction. In exchange, Jacobo Castillo agreed to plead guilty and waive certain rights. The two relevant provisions of the plea agreement are as follows:

*Waiver of Constitutional Rights*:

The Defendant, DOMINGO JACOBO CASTILLO, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    (a).   The right to a jury trial on the charge;

    (b).   The right to see, hear and question the witnesses;

    (c).   The right to remain silent at trial;

    (d).   The right to testify at trial; and

    (e).   The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pre-

trial motions currently pending before the Court are waived.

Another provision of the plea agreement concerned his appeal rights:

*Appeal Rights*:

The Defendant agrees to waive the right to appeal the sentence if the Court imposes a prison term within the guideline range of 21-27 months and if the Court orders said term to run concurrently with [his previous sentence] with a term of supervised release of no longer than three (3) years.

Nowhere does the plea agreement refer to a conditional plea under Federal Rule of Criminal Procedure 11(a)(2) or identify issues preserved for appeal. At sentencing, the probation officer recommended a different criminal history score than the government, which resulted in a proposed Sentencing Guidelines range of 46 to 57 months. The court accepted the plea agreement and the criminal history score recommended by the probation officer and imposed a sentence of 46 months to run concurrently with the term Jacobo Castillo was serving for a prior conviction. Upon examining the plea agreement, the court told Jacobo Castillo, "[Y]ou have the right to appeal this court's determinations."

Jacobo Castillo appealed. Although his sentence exceeded the prison term specified in the plea agreement, Jacobo Castillo did not appeal his sentence. Instead, he challenged his underlying conviction by raising the preindictment delay and the district court's refusal to suppress the firearm seized in the search. Inexplicably, in response to Jacobo Castillo's opening brief, the government did not assert Jacobo Castillo's plea agreement as a bar to his appeal. Instead, the government addressed only the merits of Jacobo Castillo's claims. Over a dissent, a panel majority held that we had no jurisdiction to

hear Jacobo Castillo's claims and dismissed his appeal: "[Jacobo Castillo's] failure to preserve his appellate rights by entering a conditional plea pursuant to Rule 11(a)(2) deprives us of the authority to consider the merits of a claim." *Jacobo Castillo*, 464 F.3d at 989. The dissenting judge acknowledged that some of our decisions would support the majority's position, but argued that our cases were in conflict. *Id.* at 992 (Bybee, J., dissenting). We agreed to rehear this case en banc to resolve this issue and to overrule our inconsistent precedents.

## II

**[1]** We begin with the fundamental proposition that "federal courts are courts of limited jurisdiction . . . empowered to hear only those cases that (1) are within the judicial power of the United States, as defined in the Constitution, and (2) that have been entrusted to them by a jurisdictional grant by Congress." 13 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3522, at 60 (2d ed. 1984) (footnote omitted); *see also Ins. Corp. of Ir. Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701-02 (1982); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372-73 (1978). We clearly have constitutional power and statutory authorization to adjudicate this case. Article III provides that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution [and] the Laws of the United States." U.S. CONST. art. III, § 2. Additionally, Congress has affirmatively authorized district courts to hear criminal cases involving "all offenses against the laws of the United States." 18 U.S.C. § 3231; *see also Lamar v. United States*, 240 U.S. 60, 65 (1916) (stating that "nothing can be clearer than that the district court . . . has jurisdiction of all crimes cognizable under the authority of the United States"). Finally, Congress has conferred jurisdiction on the courts of appeals to hear "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291; *see, e.g., SEC v. Capital*

*Consultants LLC*, 453 F.3d 1166, 1169 (9th Cir. 2006) (per curiam); *United States v. Griffin*, 440 F.3d 1138, 1141 (9th Cir.), *cert. denied*, 127 S. Ct. 259 (2006). In the absence of some other provision that would deprive us of appellate jurisdiction, we have both the constitutional power and congressional authorization to hear the instant appeal.

**[2]** The panel majority thought that Federal Rule of Criminal Procedure 11 was such a provision. The panel majority held that Rule 11(a)(2) "deprive[d] us of the authority to consider the merits of [Jacobo Castillo's] claim," and that the deprivation was a "jurisdictional defect" and "not waivable." *Jacobo Castillo*, 464 F.3d at 989. In a series of recent cases, the Supreme Court has addressed whether court-promulgated rules can strip the lower courts of jurisdiction. *See generally United States v. Sadler*, 480 F.3d 932, 935-37 (9th Cir. 2007).

In *United States v. Cotton*, 535 U.S. 625, 627-28 (2002), the defendants were charged with conspiracy to possess and distribute cocaine, but the superseding indictment failed to allege the amount of cocaine that would trigger an enhanced sentence. Following conviction, and without objection, the court imposed a sentence in excess of the statutory maximum, in violation of the defendants' Fifth and Sixth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Cotton*, 535 U.S. at 628, 634. The Fourth Circuit dismissed, holding that the sentencing court lacked jurisdiction to sentence the defendants for a crime with which they were not properly charged. *Id*. at 629. The Supreme Court reversed in an unanimous opinion holding that the defect in the indictment did not deprive the court of subject-matter jurisdiction. *Id.* at 630-31. The Court described jurisdiction as the "court's power to hear a case," a power that "can never be forfeited or waived." *Id*. at 630. Jurisdiction stands in contrast to procedural rules, such as "the grand jury right[, which] can be waived." *Id*. The Court explained:

> [D]efects in an indictment do not deprive a court of
> its power to adjudicate a case. In *Lamar v. United*

*States*, 240 U.S. 60 (1916), the Court rejected the claim that "the court had no jurisdiction because the indictment does not charge a crime against the United States." *Id.* at 64. Justice Holmes explained that a district court "has jurisdiction of all crimes cognizable under the authority of the United States . . . [and] [t]he objection that the indictment does not charge a crime against the United States goes only to the merits of the case." *Id.* at 65. Similarly, *United States v. Williams*, 341 U.S. 58, 66 (1951), held that a ruling "that the indictment is defective does not affect the jurisdiction of the trial court to determine the case presented by the indictment."

*Id.* at 630-31 (omission and alterations in original).

The Court was careful to distinguish between a court's jurisdiction—its authority to adjudicate a case—and a court's procedures—by which the court prescribes the orderly conduct of its business. The former is power set forth by the Constitution and granted by Congress; the latter, by contrast, are rules promulgated by the courts themselves to aid in the expeditious disposition of cases and the efficient management of judicial resources. We often construe these rules as mandatory when properly invoked; failure to observe our procedures may result in cases being decided on something less than a full consideration of the merits of the claim. We do so out of the need for uniform treatment of parties and in the interests of judicial economy, but not because the rules deprive us of our authority to proceed. Defects in procedural rules may be waived or forfeited by parties who fail to object properly,[1] whereas defects in our subject-matter jurisdiction go to the inherent power of the court and cannot be waived or forfeited.

---

[1]Waiver is "the intentional relinquishment or abandonment of a known right," whereas forfeiture is "the failure to make the timely assertion of [that] right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted).

After *Cotton*, in *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004), the Court held that a federal court's subject-matter jurisdiction cannot be expanded based on the parties' litigation conduct. *Kontrick* involved a creditor who filed an amended complaint objecting to the discharge of the debtors' debts, but did so after the deadline for filing the amendment had passed. *Id.* at 449. After the district court entered summary judgment for the creditor, the debtor objected, for the first time on appeal, that the complaint was untimely and that the court, therefore, lacked jurisdiction to enter summary judgment. *Id.* at 451. The Court unanimously held that the bankruptcy time rule was not jurisdictional, *id.* at 452, but that the debtor had forfeited his right to rely on the limit by not objecting earlier, *id.* at 458-60. The Court noted that the label "jurisdictional" has been applied loosely and that

> [c]larity would be facilitated if courts and litigants used the label "jurisdictional" not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.

*Id.* at 455. Applying this distinction, the Court observed that Federal Rules of Bankruptcy 4004(a), (b), and 9006(b)(3), which govern the timing for filing a complaint, did not affect the court's subject-matter jurisdiction. *Id.* The Court noted that "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction," *id.* at 452, and because the sections governing the timing of filing complaints were found in the Bankruptcy Rules—which are promulgated by the Court —and not in the U.S. Code, the timeliness provisions were forfeitable claim-processing rules and did not affect subject matter jurisdiction, *id.* at 453-54; *see also Kroger*, 437 U.S. at 370 ("[I]t is axiomatic that [procedural rules] do not create or withdraw federal jurisdiction.").

**[3]** The Court reiterated this analysis most recently in *Eberhart v. United States*, 126 S. Ct. 403 (2005) (per curiam). *Eberhart* involved Federal Rules of Criminal Procedure 33 and 45(b)(2), which concern the timing for filing new trial motions. 126 S. Ct. at 405. The defendant had raised grounds for filing a new trial motion after the prescribed deadline had passed, but the government failed to object to the defendant's actions until the case was heard on appeal. *Id.* at 404. In another unanimous opinion, the Supreme Court held that if the Bankruptcy Rules at issue in *Kontrick* were "nonjurisdictional claim-processing rules," nearly identical provisions of the *Federal Rules of Criminal Procedure* could not be jurisdictional. *Id.* at 405. "[D]istrict courts must observe the clear limits of the Rules of Criminal Procedure when they are properly invoked," the Court reasoned, but "[t]his does not mean that limits like those in Rule 33 are not forfeitable when they are *not* properly invoked." *Id.* at 406.[2]

**[4]** We recently reached a similar conclusion in determining that Federal Rule of Appellate Procedure 4(b) is a forfeitable, nonjurisdictional claim-processing rule. *Sadler*, 480 F.3d at 939-40. In *Sadler*, we observed that the timing requirements for criminal appeals were grounded in the *Federal Rules* rather than in statute and that "[p]rocedural rules created by the judiciary cannot shrink or expand the scope of

---

[2]The Court's decision this past Term in *Bowles v. Russell*, No. 06-5306, slip op. (June 14, 2007), does not affect this analysis. In *Bowles*, the Supreme Court addressed whether a district court could "extend a party's time for filing an appeal beyond the period allowed by statute." *Id.* at 1. The Court held that it could not. Distinguishing *Kontrick* and *Eberhart*, the Court explained that "[b]ecause Congress specifically limited the amount of time by which district courts can extend the notice-of-appeal period in [28 U.S.C.] § 2107(c), that limitation is more than a simple claim-processing rule . . . . [W]hen an appeal has not been prosecuted in the manner directed, within the time limited by the acts of Congress, it must be dismissed for want of jurisdiction." *Id.* at 8 (internal quotation marks and citation omitted). Statutory time limits are different from court rules. *See id.* at 5.

federal jurisdiction." *Id.* at 936-37 (citing *Kontrick*, 540 U.S. at 453). We ultimately dismissed the appeal, however, because we found that the government had properly raised the untimeliness argument, and under the rules we were required to dismiss. *Id.* at 940-42.

**[5]** Reading these cases together, we conclude that our procedural rules do not expand or contract our jurisdiction and that the action or inaction of parties neither confers jurisdiction nor deprives us of the power to adjudicate a case. In the colorful words of Judge Sirica: "When it comes to jurisdiction of the federal courts, truly, to paraphrase the [S]cripture, the Congress giveth, and the Congress taketh away." *Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 366 F. Supp. 51, 55 & n.6 (D.D.C. 1973). We turn to whether anything in Rule 11 alters this analysis.

III

**[6]** In general, a defendant who enters into a plea agreement waives his right to appeal his conviction. *Lopez-Armenta*, 400 F.3d at 1175; *Reyes-Platero*, 224 F.3d at 1115. Federal Rule of Criminal Procedure 11(a)(2) permits a defendant to "reserv[e] in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." Ordinarily, if an appellant does not follow this process, enters an unconditional plea and still raises such issues on appeal, the government objects and the court dismisses the appeal. *See, e.g.*, *Lopez-Armenta*, 400 F.3d at 1175; *Reyes-Platero*, 224 F.3d at 1114; *United States v. Nunez*, 223 F.3d 956, 958-59 (9th Cir. 2000); *Floyd*, 108 F.3d at 203; *United States v. Cortez*, 973 F.2d 764, 766 (9th Cir. 1992). Here, however, the government failed to object to Jacobo Castillo's appeal and now argues that, because we lack subject-matter jurisdiction, we must dismiss regardless of whether it properly raised the objection.[3]

---

[3]We do not decide whether Jacobo Castillo entered into a valid conditional plea pursuant to Rule 11(a).

**[7]** Nothing in Rule 11 affects our jurisdiction to hear Jacobo Castillo's appeal. As previously discussed, only Congress can confer or divest the lower federal courts of subject-matter jurisdiction. Our jurisdiction is grounded in Article III and in the statutes, not in the *Federal Rules* promulgated by the Supreme Court under the Rules Enabling Act, 28 U.S.C. §§ 2071-2077. That Act grants the Court the power "to prescribe general rules of practice and procedure" provided that "[s]uch rules . . . not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(a), (b). Those rules may not expand or diminish the jurisdiction conferred by Congress. *See Venner v. Great N. Ry. Co.*, 209 U.S. 24, 35 (1908) ("The jurisdiction of the circuit court is prescribed by laws enacted by Congress in pursuance of the Constitution[,] and this court by its rules has no power to increase or diminish the jurisdiction thus created."); *Standish v. Gold Creek Mining Co.*, 92 F.2d 662, 663 (9th Cir. 1937) ("It is fundamental that a rule of court cannot enlarge or restrict jurisdiction given by a statute.").

**[8]** The boundaries of our subject matter jurisdiction are found in 18 U.S.C. § 3231 and 28 U.S.C. § 1291. These sections respectively limit a district court to adjudicating federal offenses and appellate courts to reviewing "final decisions" of the district courts. These provisions do not discuss plea agreements or their possible effects on jurisdiction. Similarly, we find no evidence in Rule 11 itself or even in the advisory committee's notes suggesting a statutory basis for the government's contention that the Rule affects in any way the jurisdiction of the court.[4] Although it is true that some of the *Federal Rules* restate jurisdictional requirements compelled by the Constitution or statute, *see, e.g.*, FED. R. CRIM. P. 18

---

[4]Sections 3731 and 3742 of Title 18, which govern criminal appeals by the United States and the appeal of sentences, are also silent about the courts' jurisdiction over convictions obtained through a plea agreement. Additionally, 18 U.S.C. § 3438, which governs pleas, simply refers the reader to the *Federal Rules of Criminal Procedure.*

(restating the requirements of Article III, section 2 and the Sixth Amendment that the government prosecute a crime in the district in which the offense was committed); FED. R. APP. P. 4(a)(1)(A) (restating 28 U.S.C. § 2107(a)'s 30-day limit on filing notices of appeal), any jurisdictional requirements found in those rules exist by virtue of the Constitution and statutes, not the rules themselves. Neither Rule 11(a)(2) nor the advisory committee's notes make any mention of a statutory or constitutional jurisdictional requirement. The only apparent jurisdictional requirement is that we review the "final decision" of the district court, and it is uncontroversial that an accepted plea agreement is a "final decision" reviewable by an appellate court.[5] *See Corey v. United States*, 375 U.S. 169, 174 (1963) ("Final judgment in a criminal case . . . means sentence. The sentence is the judgment." (internal quotations omitted)); *United States v. Moskow*, 588 F.2d 882, 889 (3d Cir. 1978) ("A judgment of sentence is a final order whether the sentence is imposed after a jury verdict or after the entry of a guilty plea."); *see also Collier v. Bayer*, 408 F.3d 1279, 1290 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1463 (2006).

The panel majority relied on *Tollett v. Henderson*, 411 U.S. 258 (1973), and *Menna v. New York*, 423 U.S. 61 (1975) (per curiam), to support its assertion that, absent compliance with Rule 11(a)(2), the entry of a guilty plea is a jurisdictional bar to the review of most antecedent constitutional violations. *Jacobo Castillo*, 464 F.3d at 989-90. We do not read these cases to limit our jurisdiction. *Tollett* involved a habeas claim from a state prisoner seeking relief on the ground that African-Americans had been systematically excluded from the grand jury that had indicted him. 411 U.S. at 259. The panel majority cited *Tollett* for the proposition that entry of

---

[5]Section 2072(c) of Title 28 provides that the rules of procedure "may define when a ruling of a district court is final for purposes of appeal under section 1291." As discussed in the text, there is no question that a judgment entered following a plea is a final judgment.

" 'a guilty plea represents a break of the chain of events which has preceded it in the criminal process. . . . [After entering a guilty plea, a defendant] may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.' " *Jacobo Castillo*, 464 F.3d 989 (quoting 411 U.S. at 267). Similarly, in *Menna*, the Court held that "[w]here the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." 423 U.S. at 62. The Court clarified that the entry of a guilty plea "simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established." *Id.* at 63 n.2. In our view, these cases address the *preclusive effect* to be given the plea agreement, not the *jurisdiction* of the court.

[9] At least four other circuits have recently addressed whether a plea or plea agreement affects our appellate jurisdiction. All have concluded that it does not.[6] In *United States v. Hahn*, 359 F.3d 1315, 1322 (10th Cir. 2004) (en banc) (per curiam), the Tenth Circuit rejected the government's argument "that the entry of an enforceable appellate waiver renders [the] case moot, thus leaving [the court] without the requisite case or controversy necessary for subject matter jurisdiction under Article III of the Federal Constitution." The en banc court reasoned that "[r]egardless of the phrase

---

[6]The panel majority cited *United States v. Rogers*, 387 F.3d 925 (7th Cir. 2004), for the proposition that an "unconditional plea created a non-waivable jurisdictional bar to appellate review." *Jacobo Castillo*, 464 F.3d at 990. We do not read *Rogers* as standing for this proposition. Rather, *Rogers* holds that "a defendant's failure to preserve a pre-trial motion for review under Rule 11(a)(2) constitutes a *waiver* of the issue." 387 F.3d at 933 (emphasis added); *see also id.* (holding that because the defendant entered into an unconditional plea, he "waived his right to have [the] court review his Fourth Amendment claim").

employed, [the] case is not moot because we have the power to grant a legally cognizable remedy requested by a party—namely, voiding the plea agreement." *Id.* at 1323. The court held that it had "both statutory and constitutional subject matter jurisdiction over appeals when a criminal defendant has waived his appellate rights in an enforceable plea agreement." *Id.* at 1324. It had constitutional authority under Article III because the availability of even a partial remedy " 'is sufficient to prevent a case from being moot,' " *id.* at 1323 (quoting *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam)), and the district court's entry of a sentence "constitutes a final order, thereby establishing subject matter jurisdiction under 28 U.S.C. § 1291," *id.* at 1320.[7]

In *United States v. Caruthers*, 458 F.3d 459, 471-72 (6th Cir.), *cert. denied*, 127 S. Ct. 452 (2006), the Sixth Circuit considered whether the defendant's guilty plea, which included an appellate waiver, left the court without jurisdiction to hear the appeal. Although resolving the case on different grounds, the Sixth Circuit approvingly cited the Tenth Circuit's opinion in *Hahn* as having "articulated powerful reasons for concluding that even when defendants validly waive their appeals, the courts of appeal do indeed have jurisdiction under both the relevant statutes (28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1)) and Article III." *Id.* at 473 n.6.

The Fifth Circuit took the same approach in *United States v. Story*, 439 F.3d 226, 230-31 (5th Cir. 2006), holding that an appellate waiver in a plea agreement does not deprive the appeals court of jurisdiction. In a situation similar to the case

---

[7]The dissent would find that Jacobo Castillo's plea mooted his appeal, yet our colleague concedes that we have jurisdiction to determine whether Jacobo Castillo's plea was entered into knowingly and voluntarily, whether he entered a conditional plea under Rule 11(a)(2) and to decide any claims preserved by the conditional plea. Dissenting Op. at 9018 n.1. If we have jurisdiction to determine these questions, it is not clear why, under the dissent's analysis, we lack jurisdiction to determine the preclusive effect of the waiver.

before us, the government failed to enforce the appellate waiver in the defendant's plea agreement by not raising the issue in any of its appellate briefs. *Id.* at 231. The Fifth Circuit held that it had jurisdiction to hear the appeal because "[t]he district court's entry of [the defendant's] sentence is a final decision and § 1291 confers subject matter jurisdiction upon [the appeals courts]." *Id.* The appeal waiver did not strip the court of jurisdiction because "plea agreements are construed under the principles of contract law" and "[a] party may waive a contract provision that is beneficial to it." *Id.* The appellate waiver clearly benefits the government, and "is enforceable to the extent that the government invokes the waiver provision . . . . In the absence of the government's objection to [the defendant's] appeal based on his appeal waiver, the waiver is not binding because the government has waived the issue." *Id.* The Fifth Circuit then proceeded to the merits of the appeal. *Id.*

Finally, in *United States v. Gwinnett*, 483 F.3d 200, 201 (3d Cir. 2007), a defendant entered into a plea agreement in which she waived her right to appeal. The Third Circuit concluded that, despite the plea, it

> retains subject matter jurisdiction over the appeal by a defendant who has signed an appellate waiver. It could not be otherwise. After all, a sentence based on constitutionally impermissible criteria, such as race, or a sentence in excess of the statutory maximum sentence for the defendant's crime, can be challenged on appeal even if the defendant executed a blanket waiver of his appeal rights. It follows that we have subject matter jurisdiction over [such a defendant's] appeal notwithstanding her waiver of appeal. Nonetheless, we will not exercise that jurisdiction to review the merits of [a defendant's] appeal if we conclude that she knowingly and voluntarily waived her right to appeal unless the result would work a miscarriage of justice.

*Id.* at 203 (citation and internal quotation marks omitted).

**[10]** We agree with our sister circuits. Regardless of whether a defendant enters into a conditional plea or an unconditional plea, we retain jurisdiction to hear the appeal. The *preclusive effect* we give to the plea agreement may depend on the nature of the plea and the circumstances in which it is brought to our attention, issues on which we do not express an opinion here.

IV

**[11]** We have jurisdiction to adjudicate this appeal. To the extent our prior decisions suggest otherwise, they are overruled. We express no opinion on the merits of Jacobo Castillo's claims, including whether he entered into a valid conditional plea under Rule 11(a)(2) or an intelligent and knowing unconditional plea. We vacate the panel's opinion, reported at 464 F.3d 988, and remand the case to the panel for further proceedings consistent with this opinion.

**VACATED AND REMANDED** to the three-judge panel.

CALLAHAN, Circuit Judge, dissenting:

I

The precise issue in this case is whether this court has jurisdiction over pre-plea constitutional claims following a conviction pursuant to an unconditional guilty plea. The answer is no. By entering an unconditional guilty plea whereby a defendant admits his factual guilt, he removes the issue of guilt from his case, rendering moot any pre-plea challenges that do not implicate the validity of the admission itself. We therefore lack Article III jurisdiction over pre-plea constitutional claims because of the absence of a case or controversy. *See Iron*

*Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983); *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1963) ("Our lack of jurisdiction to review moot cases derives from the require-ment of Article III of the Constitution under which the exer-cise of judicial power depends upon the existence of a case or controversy."); *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005) ("If the controversy is moot, both the trial and appellate courts lack subject matter jurisdiction, and the concomitant 'power to declare the law' by deciding the claims on the mer-its." (citations omitted)). Accordingly, I respectfully dissent.

The three-judge panel majority was correct by recognizing that this case is governed by *Tollett v. Henderson*, 411 U.S. 258 (1973), and *Menna v. New York*, 423 U.S. 61 (1975). In *Tollett*, the defendant pleaded guilty in state court to a grand jury indictment for first degree murder and was sentenced to a 99-year prison term. 411 U.S. at 259. He sought federal habeas relief on the grounds that African Americans "were systematically excluded from . . . grand jury" service. *Id.* at 260. The Sixth Circuit focused on "whether respondent's fail-ure to object to the indictment within the time provided by [state] law constituted a waiver of his Fourteenth Amendment right to be indicted by a constitutionally selected grand jury," and granted relief because the defendant demonstrated that he did not waive his right to a constitutional grand jury. *Id.* at 259-60. The Supreme Court granted the warden's petition for a writ of certiorari, framing the issue as "whether a state pris-oner, pleading guilty with the advice of counsel, may later obtain release through federal habeas corpus by providing only that the indictment to which he pleaded was returned by an unconstitutionally selected grand jury." *Id.* at 260.

The Supreme Court answered that question in the negative, holding "that respondent's guilty plea here . . . forecloses independent inquiry into the claim of discrimination in the selection of the grand jury." *Id.* at 266. The Court reasoned that:

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, *he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea*. He may only attack the voluntary and intelligent character of the guilty plea[.]

*Id.* at 267 (emphasis added).

The Court also rejected the lower court's application of the "waiver" doctrine:

If the issue were to be cast solely in terms of "waiver," the Court of Appeals was undoubtedly correct . . . . But just as the guilty pleas in the *Brady* trilogy were found to foreclose direct inquiry into the merits of claimed antecedent constitutional violations there, we conclude that respondent's guilty plea here alike forecloses independent inquiry into the claim of discrimination in the selection of the grand jury.

*Id.* at 266. *Tollett* makes clear that a guilty plea "forecloses independent inquiry" into "claimed antecedent constitutional violations," not by virtue of a waiver, but because an unconditional guilty plea breaks the chain of events in a criminal proceeding. The unconditional guilty plea moots any claims of pre-plea constitutional violations that do not affect the voluntary and intelligent nature of the guilty plea because the admission of guilt is undisturbed by such alleged infirmaries.

*Menna* further explained that the guilty plea is not a "waiver," but removes guilt issues from the case. 423 U.S. at 62 n.2. *Menna* involved a defendant who pleaded guilty to charges after the state court denied his motion to dismiss for violation of the Double Jeopardy Clause. *Id.* at 61. The state appellate

court affirmed the conviction, declining to address the defen-
dant's double jeopardy argument. The Supreme Court
reversed, explaining that the issue was not one of "waiver" of
a constitutional right:

> The point of [*Tollett*] is that a counseled plea of
> guilty is an admission of factual guilt so reliable that,
> where voluntary and intelligent, it quite validly
> *removes the issue of factual guilt* from the case. In
> most cases, factual guilt is a sufficient basis for the
> State's imposition of punishment. A guilty plea,
> therefore, simply *renders irrelevant* those constitu-
> tional violations not logically inconsistent with the
> valid establishment of factual guilt and which do not
> stand in the way of conviction if factual guilt is val-
> idly established.

*Id.* at 62 n.2 (emphasis added). The Court ultimately held that
the defendant's Double Jeopardy claim was not barred by his
guilty plea because "the claim is that the State may not con-
vict petitioner no matter how validly his factual guilt is estab-
lished." *Id. Menna* demonstrates that the guilty plea—by
removing the issue of factual guilt from the case and render-
ing irrelevant pre-plea constitutional violations that do not
implicate the validity of the guilty plea—necessarily destroys
the case or controversy nature of the guilt phase of a criminal
proceeding.

Subsequent to *Tollett* and *Menna*, the Supreme Court clari-
fied that review of a guilty plea is confined to the voluntary
and intelligent nature of the plea itself. In *Mabry v. Johnson*,
467 U.S. 504 (1984), the Supreme Court considered whether
a defendant's acceptance of a plea offer created a right to
have the offer enforced, after the prosecutor withdrew the
offer and the defendant subsequently entered an unconditional
guilty plea pursuant to a new plea bargain. The Court rea-
soned that "a voluntary and intelligent plea of guilty made by
an accused person, who has been advised by competent coun-

sel, may not be collaterally attacked. . . . It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired." *Id.* at 508-09. The Court held that because the defendant's plea was not induced by the prosecutor's withdrawn offer and the defendant did not allege ineffective assistance of counsel, the guilty plea "fully satisfied the test for voluntariness and intelligence." *Id.* at 510. Therefore, the defendant could not then challenge his conviction by alleging that the withdrawn offer violated due process. *Id.* at 510-11.

## II

On appeal Jacobo Castillo challenges the district court's denial of his motion to suppress evidence seized in violation of the Fourth Amendment. The Supreme Court has expressly declared that Fourth Amendment violations do not affect the validity of the guilty plea or conviction. *See Haring v. Prosise*, 462 U.S. 306, 321 (1983) ("[W]hen a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on the evidence that may have been improperly seized."). Because the seizure of evidence does not implicate Jacobo Castillo's guilty plea, under *Tollett* and *Menna* Jacobo Castillo's guilty plea rendered this appellate claim moot.

Jacobo Castillo also alleges that a pre-indictment delay violated his due process rights. However, this court has held that the accused's right to a speedy trial "is to guarantee that [his] right to a fair trial is not substantially prejudiced by either pr[e]- or post-accusation delays. . . . If guilt can be validly established such violations are not logically inconsistent therewith." *United States v. O'Donnell*, 539 F.2d 1233, 1237 (9th Cir. 1976) (superseded by rule on other grounds). Because pre-indictment delay is one of the "constitutional violations not logically inconsistent with the valid establish-

ment of factual guilt" described by *Menna*, Jacobo Castillo also "rendered irrelevant" this claim by entering an unconditional guilty plea. Because both issues advanced on appeal fall within *Tollett*'s foreclosure of independent inquiry, Jacobo Castillo's appeal presents no case or controversy. Therefore, this court lacks jurisdiction to hear Jacobo Castillo's appeal.[1]

### III

In addition to correctly applying Supreme Court precedent, the three-judge majority opinion was consistent with Ninth Circuit authority because we have repeatedly held that an unconditional guilty plea deprives this court of jurisdiction to hear claims of pre-plea error. *See United States v. Reyes-Platero*, 224 F.3d 1112 (dismissing appeal of unconditional guilty plea conviction for lack of jurisdiction where defendant alleged pre-plea treaty defect); *United States v. Floyd*, 108 F.3d 202 (9th Cir. 1997) (dismissing appeal of pre-plea denial of suppression motion for lack of jurisdiction); (*United States v. Carrasco*, 786 F.2d 1452 (9th Cir. 1986) (holding that the court lacks jurisdiction to consider a pre-plea motion to suppress evidence when there was no valid conditional plea). While these cases describe the guilty plea as a "waiver," all but *Carrasco* also cite to *Tollett* in support of their holdings that this court lacks jurisdiction over pre-plea constitutional claims. *Cf. United States v. Lopez-Armenta*, 400 F.3d 1173 (9th Cir. 2005) (relying on *Tollett* and dismissing pre-plea claims without describing dismissal as jurisdictional, describing unconditional guilty plea as a waiver).

---

[1]I recognize that we have jurisdiction to determine whether Jacobo Castillo's guilty plea was entered knowingly and voluntarily, and that the remedy for an unknowing or involuntary plea would be withdrawal of the plea. *See Machibroda v. United States*, 368 U.S. 487, 492 (1962). I also recognize that we have jurisdiction to determine whether Jacobo Castillo entered a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2) and over any claims preserved by that procedure. *See United States v. Carrasco*, 786 F.2d 1452, 1453-54 (9th Cir. 1986).

While our precedent reaches the correct result, we have used the term "waiver" loosely, causing us to lose sight of the underpinnings in *Tollett*.[2] A guilty plea clearly waives a defendant's right to a trial, right to cross-examine witnesses, and right to remain silent. But the removal of issues pertaining to the lawfulness of pre-plea governmental conduct from a criminal proceeding does not stem from the waiver of these rights. The removal of pre-plea constitutional issues from a criminal proceeding stems from a defendant's admission of past conduct. It is the admission of guilt—not his waiver of trial rights—that moots any pre-plea challenges to his conviction because the validity of the conviction rests on the voluntary admission of guilt, not on any pre-plea governmental conduct. *See Prosise*, 462 U.S. at 319, 321 (explaining that a guilty plea is both an admission of past conduct and a waiver of constitutional trial rights, and that *Tollett* recognized that a guilty plea is not undermined by the validity of a Fourth Amendment violation because the plea does not rest on seized evidence); *United States v. Broce*, 488 U.S. 563, 573 (1989) (explaining that a valid guilty plea does not involve the conscious waiver of potential defenses).

The en banc majority distinguishes *Tollett* and *Menna* as "address[ing] the preclusive effect to be given the plea agreement," and "not [addressing] the jurisdiction of the court." There is evidence of a plea agreement in *Tollett* because the Court noted that an "agreed-upon sentence was imposed." 411 U.S. at 261. But the holding in *Tollett* had nothing to do with the plea agreement; rather it focused exclusively on the plea—the admission of guilt. The irrelevance of a plea agreement is emphasized by *Menna*, where there was no indication that a plea agreement even existed. Instead of dismissing *Tollett* as not controlling, we should clarify that a valid unconditional

---

[2]The Seventh Circuit has suffered from the same problem, incorrectly using the term "waiver" to describe the effect of a defendant's unconditional guilty plea on its appellate jurisdiction. *See United States v. Rogers*, 387 F.3d 925 (7th Cir. 2004).

guilty plea deprives this court of jurisdiction to consider ante-
cedent errors "not logically inconsistent with the establish-
ment of factual guilt and which do not stand in the way of
conviction if factual guilt is validly established." *Menna*, 423
U.S. at 62 n.2.

The three-judge panel majority dismissed Jacobo Castillo's
appeal, relying on our circuit precedent that recognizes the
jurisdictional implications of a guilty plea. The majority prop-
erly distinguished *United States v. Garcia-Lopez*, 309 F.3d
1121 (9th Cir. 2002), because that case involved a contractual
waiver of the right to appeal a *sentence* contained in a written
plea agreement. Under *Reyes-Platero*, we recognized that the
rule in *Tollett* applies only to pre-plea challenges and does not
affect our jurisdiction over error "occurring after the entry of
a guilty plea." 224 F.3d at 1115-16. Indeed, a plea *agreement*
that contains a waiver of the right to appeal can encompass a
broader set of issues than those implicated by an uncondi-
tional guilty plea. *Compare United States v. Michlin*, 34 F.3d
896, 898 (affirming conviction because plea agreement
waived the right to appeal double jeopardy claim) *with Menna*
423 U.S. at 63 (overturning conviction because the defen-
dant's unconditional guilty plea did not foreclose his double
jeopardy claim). But, absent the inclusion of a Rule 11(a)(2)
conditional plea, a plea agreement by itself does not under-
mine the import of *Tollett* and *Menna*, even if it includes
waiver language pertaining to pre-plea issues. This is because
a defendant cannot waive a right that does not exist, and this
is why the plea agreement in this case has no bearing on the
issue we address today.

IV

I agree with the en banc majority that "only Congress can
confer or divest the lower federal courts of subject matter
jurisdiction." However, I disagree that the three-judge panel
majority thought that Rule 11 deprived us of jurisdiction over
this case. The three-judge majority merely recognized that

this case did not involve a conditional plea. *United States v. Jacobo Castillo*, 464 F.3d 988, 989 (9th Cir. 2006), *reh'g en banc granted*, 473 F.3d 1264 (9th Cir. 2007). The en banc majority's labored discussion of Rule 11 has no import over the scope of our jurisdiction following an unconditional guilty plea. Nor does it undermine *Tollett* or our precedent.

The en banc majority misses the mark by focusing on the plea agreement. The agreement is relevant only to the extent that it weighs on the threshold issues of whether Jacobo Castillo entered a knowing and voluntary plea, and whether he entered a conditional plea pursuant to Rule 11(a)(2). While a plea agreement may also be relevant to whether a defendant contractually waived his right to appeal post-plea issues, such as sentencing decisions, this concern is not present here because Jacobo Castillo does not advance any post-plea claims on appeal. *See Garcia-Lopez*, 309 F.3d at 1122-23 (explaining that the government can waive the contractual appeal waiver contained in a plea agreement allowing court to hear sentencing appeal).

The out-of-circuit cases cited by the en banc majority also are not on point. *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004), *United States v. Story*, 439 F.3d 226 (5th Cir. 2006), *United States v. Caruthers*, 458 F.3d 459 (6th Cir. 2006), and *United States v. Gwinnett*, 483 F.3d 200 (3d Cir. 2007), are sentencing appeals that, like *Garcia-Lopez*, clearly implicate the appeal waiver provisions of their respective plea agreements.[3] These cases do not implicate *Tollett* or support the exercise of jurisdiction over Jacobo Castillo's pre-plea claims. They are, however, consistent with our understanding that the rule in *Tollett* applies only to pre-plea challenges and does not affect our jurisdiction over error "occurring after the entry of a guilty plea." *See Reyes-Platero*, 224 F.3d at 1116.

---

[3]The defendant in *Caruthers* was also able to challenge the denial of his suppression motion because he entered a conditional plea under Rule 11.

V

Contrary to the approach taken by the en banc majority, I would address Jacobo Castillo's threshold claims that his guilty plea (1) was not knowing and voluntary, and (2) was conditional, before disposing of this appeal. I would hold that Jacobo Castillo waived his challenge to the knowing and voluntary nature of his plea by failing to raise this argument in his opening or supplemental opening brief. *See Bazuayne v. INS*, 79 F.3d 118, 120 (9th Cir. 1995) (citing *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990) (deeming issue waived when raised for the first time in the reply brief)). Alternatively, I would deny his claim on the merits because the plea agreement does not misrepresent his appellate rights. Jacobo Castillo's contention that he entered a conditional guilty plea is also belied by the record. Because Jacobo Castillo failed to preserve his claims through a Rule 11(a)(2) conditional plea, under *Tollett*, *Menna*, and our circuit precedent, this appeal must be dismissed for lack of jurisdiction. By pleading guilty to the indictment, Jacobo Castillo rendered irrelevant and thereby mooted the claims that he seeks to advance on appeal.