**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Larry CAIN, Defendant–Appellant.**

No. 97–2991.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 13, 1998.

Decided Aug. 12, 1998.

Michelle A. Leslie (argued), Office of United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

John P. Casey (argued), Foley & Casey, Milwaukee, WI, for Defendant–Appellant.

Before POSNER, Chief Judge, MANION and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Larry Cain pled guilty to one count of a conspiracy to distribute in excess of five kilograms of cocaine. The district court sentenced him to 135 months imprisonment, enhancing his sentence for possessing a gun during the crime, and refusing to adjust downward based on his role in the conspiracy. Cain appeals from his conviction, claiming that the key evidence against him was obtained during a warrantless search of his apartment that violated the Fourth Amendment. He also challenges his sentence, arguing that the district court clearly erred when it enhanced his sentence for possessing a gun and when it declined to characterize him as a minor or minimal participant in the conspiracy. We dismiss the portion of the appeal that challenges the warrantless search because we have no jurisdiction to hear it, and we affirm the sentence.

## I.

During an ongoing narcotics investigation, the Milwaukee police conducted surveillance of Cain and others involved in the charged

conspiracy. On the day in question, the police noted that a green Ford Taurus was making several short trips between residences and businesses, some of which were places known to the police as related to the drug trade. After observing a traffic violation, police officers stopped the Ford and questioned Cain, who was driving, and Julian Holmes, who was a passenger. Cain permitted a search of the glove compartment where the officers found a large amount of cash and a rental agreement for the vehicle in Cain's name. When asked by the police if there were any weapons in the car, Cain admitted that there was a gun in the center console which he carried for protection because Holmes, his passenger, had once been kidnapped. During the traffic stop, the officers learned from a confidential informant that Cain and Holmes had just delivered a kilogram of cocaine, and the two were then arrested. The officers decided to conduct an investigative visit to one of the apartments frequented by the green Ford that day. The officers later admitted, quite candidly, that they did not believe that they had probable cause to search the apartment, and had sufficient time to obtain a warrant before going to the premises. Nevertheless, they went to the apartment without a warrant and knocked on the door, announcing themselves as police. They heard footsteps moving rapidly away from the door and noted movement visible through a peephole. Believing now that co-conspirators were in the apartment, possibly arming themselves, and that evidence might be destroyed, the officers entered the apartment. They detained the two occupants and conducted a protective sweep of the apartment, during which they obtained information that allowed them to secure a search warrant for the apartment. Upon returning to the apartment with the warrant, the police found forty kilograms of cocaine, $82,649 in cash and leases for the apartment under Holmes' and Cain's names. The officers also recovered a loaded revolver and a watch valued at $19,000 from the apartment.

Cain was charged in a two-count indictment of conspiring to possess with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1). He moved to suppress the fruits of the search, contending that the officers lacked probable cause to search the apartment and that no exigency existed to justify a warrantless entry into the apartment. The motion was referred to a magistrate, who conducted a hearing and recommended that the motion be granted. The district court heard additional evidence and then rejected the magistrate's report and recommendation, denying the motion to suppress. Cain subsequently entered into a plea agreement where he unconditionally pled guilty to one count of the indictment. The district court sentenced him to 135 months imprisonment, enhancing his base level pursuant to Sentencing Guideline section 2D1.1(b)(1) for possessing a dangerous weapon. The district court declined Cain's request to reduce his base level by two to four points pursuant to Sentencing Guideline section 3B1.2(a) and (b), rejecting the theory that Cain was a minor or minimal participant in the conspiracy. Cain appealed.

## II.

The Federal Rules of Criminal Procedure provide that a defendant may enter a conditional plea of guilty with the approval of the court and the consent of the government, "reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion." Fed. R.Crim. Pro. 11(a)(2). The government maintains that Cain entered an unconditional guilty plea and therefore waived his right to appeal the adverse determination of his motion to suppress. We agree that a guilty plea constitutes a waiver of non-jurisdictional defects occurring prior to the plea. *United States v. Adams*, 125 F.3d 586, 588–89 (7th Cir.1997); *United States v. Markling*, 7 F.3d 1309, 1312 (7th Cir.1993), *cert. denied*, 514 U.S. 1010, 115 S.Ct. 1327, 131 L.Ed.2d 206 (1995). This waiver includes Fourth Amendment claims. *Id.* In order to preserve an issue for appeal, the plea must precisely identify the pretrial issues which the defendant wishes to preserve for review, and must demonstrate that a decision on one of those issues will dispose of the case, either by allowing the plea to stand, by compelling dismissal of the indictment, or by suppressing essential evidence. *Markling*, 7 F.3d at 1313. The writing requirement is not jurisdictional, however, and we have upheld the validity of a conditional plea based on the

transcript of the plea hearing. *Id.* A review of Cain's plea and his plea hearing reveals no discussion of appeal rights or preservation of issues for appeal.

Cain concedes that he did not condition his plea on the right to appeal the district court's ruling on the suppression motion. Rather he argues that the plea agreement was ambiguous regarding whether an appeal on the pretrial suppression motion was prohibited. He cites paragraph 6(j) of the plea agreement:

> The parties acknowledge, understand and agree ... that this agreement does not require the government to take, or not to take, any particular position on any post-conviction motion or appeal.

Nothing in this paragraph gives rise to any ambiguity about whether an appeal of the suppression ruling is allowed. Rather, this paragraph addresses the government's obligation when Cain takes an allowable appeal. For example, Cain retained the right to appeal his sentence, and this provision removes any obligation from the government to take any particular position on that appeal. *See* Transcript of Change of Plea Hearing before the Honorable J.P. Stadtmueller, May 1, 1997, at 11 (where the court stated, "if I were to impose a sentence on your case that is greater or longer than that called for by the guidelines, then you ... would have the right to appeal my sentence to the Court of Appeals."). Had the facts warranted it, Cain could also have appealed the voluntariness of his plea. We cannot find on these facts that Cain preserved his right to appeal the suppression issue and we therefore do not have jurisdiction over this aspect of his appeal.[1]

### III.

We turn to the sentencing issues. Cain argues that the only evidence presented regarding the gun found in the car was his own testimony that the gun was unrelated to the drug conspiracy and was present only for "protection," since Holmes had previously been kidnapped. Without any evidence to the contrary, he contends that it was clearly improbable that the firearm was related to the drug crime. We review a district court's factual determination to enhance a sentence under section 2D1.1(b)(1) for clear error only. *United States v. Vargas,* 116 F.3d 195, 197 (7th Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 584, 139 L.Ed.2d 421 (1997); *United States v. Wetwattana,* 94 F.3d 280, 283 (7th Cir.1996). The Sentencing Guidelines provide that, for certain offenses involving drugs, the court should increase the base offense level by two levels if a dangerous weapon, including a firearm, was possessed. U.S.S.G. § 2D1.1(b)(1); *Wetwattana,* 94 F.3d at 283. Application Note 3 to that section explains that the "enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it was clearly improbable that the weapon was connected with the offense." As an example of an occasion when the enhancement would not apply, the Application Notes describe an arrest of a defendant at his residence, where police find an unloaded hunting rifle in the closet.

The government must prove that this enhancement is warranted by a preponderance of the evidence. *Wetwattana,* 94 F.3d at 283. The government is not required to demonstrate that the weapon was connected to the offense, but rather only that the weapon was possessed during the offense of conviction or during relevant conduct as that term is defined in Sentencing Guideline section 1B1.3. *Id.* The government met this burden easily in the instant case because Cain admitted that the gun in the car was his, and also admitted at his plea hearing that he was using the car that day to drive Holmes to and from various drug deals. The burden then shifted to Cain to show that it was clearly improbable that the gun was connected to the offense. Cain offered his statement that he carried the gun for protection from kidnappers and not to facilitate drug deals. The district court did not clearly err in finding that this explanation was not credible.

Cain also faults the district court for declining to reduce his base offense level pursuant to Sentencing Guideline section

---

1. We thus expressly decline to rule on Cain's Fourth Amendment claim, which may well have had merit.

3B1.2 by two to four levels because of his minimal or minor role in the conspiracy. We review the district court's section 3B1.2 determination for clear error. *United States v. Farouil*, 124 F.3d 838, 847 (7th Cir.1997); *United States v. Trigg*, 119 F.3d 493, 503 (7th Cir.1997). Section 3B1.2 provides a range of adjustments for a defendant who plays a part in committing an offense that makes him substantially less culpable than the average participant. *Trigg*, 119 F.3d at 503. The defendant bears the burden of proving by a preponderance of the evidence that he was less culpable than the scheme's other participants. *Farouil*, 124 F.3d at 848. Cain maintains that he was less culpable than his co-conspirators because he never personally handled drugs or money, was not a body-guard and never hand-delivered narcotics. Moreover, he claims that he rented the green Ford in connection with his father's business and not for the purpose of furthering the conspiracy. He also maintains that he rent-ed the apartment that was used as a stash house not for that purpose but simply be-cause he was having marital problems. The court did not clearly err by discounting these explanations and instead finding that Cain provided necessary services to the conspiracy by driving Holmes, renting the car used to deliver drugs, and renting the apartment used to store them. We therefore affirm the sentence in its entirety.

DISMISSED IN PART AND AFFIRMED IN PART.