In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1091

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FONTEZ L. COMBS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:09-cr-30178-MJR-1—**Michael J. Reagan**, *Judge*.

ARGUED JULY 12, 2011—DECIDED SEPTEMBER 12, 2011

Before BAUER, CUDAHY and TINDER, *Circuit Judges*.

PER CURIAM. Fontez L. Combs pleaded guilty to one count of possession of a firearm by a felon. 18 U.S.C. § 922(g)(1). He was sentenced at the top of his Guidelines range to 33 months' imprisonment. On appeal, Combs argues that the district court committed clear error by refusing to address the merits of an untimely motion to suppress the gun underlying his conviction. But Combs waived this contention by pleading guilty uncon-

ditionally, and, because he did not preserve any issues for review, we must dismiss for lack of jurisdiction.

## I. BACKGROUND

By September 2008, a Drug Enforcement Administrative (DEA) task force in southern Illinois was actively investigating Combs, who was suspected of buying large amounts of heroin, cocaine, and marijuana in Chicago and peddling the drugs in downstate Madison and East St. Louis. In January 2009, a drug dealer who was arrested a month earlier told investigators that during the second half of 2008 he bought from Combs about 2,000 grams of heroin and 500 grams of crack. This dealer recounted that typically he picked up drugs at the house in Madison where Combs was living, or else in East St. Louis at the homes of Combs's mother and sister.

On April 3, 2009, investigators assigned to the task force directed an informant to call Combs and arrange to buy cocaine. Combs agreed to meet, but an hour later surveillance agents watching his Madison residence saw him leave by car with another man and travel into Missouri. When the informant called again to inquire about the delay, Combs said he was in Missouri trying to "make a move." In fact, soon after that telephone conversation, investigators watched Combs and his companion stop in the parking lot of a St. Louis casino and accept a black bag from a man waiting there. Combs was then followed back to his house in Madison, which he entered with his passenger and the black bag. The meeting in St. Louis and Combs's arrival at his house in

Madison was recorded on video. About an hour after arriving home, Combs met the informant outside his mother's house in East St. Louis. A surveillance camera at the residence captured this meeting. Combs said he had just gotten 2 kilograms of cocaine in St. Louis and also had heroin available for sale. The informant did not make a purchase.

Based on this information, on April 7 the task force obtained and executed a federal search warrant for the Madison residence, where they found 650 grams of marijuana, a handgun, and ammunition. Combs was indicted in November 2009 and arrested in December. At his initial appearance on December 16, a magistrate judge appointed the federal public defender to represent Combs and ordered that all pretrial motions be filed no later than January 7, 2010. But in early February the public defender withdrew after Combs hired private counsel (who continue to represent him in this appeal). The new lawyers asked for a continuance so they could obtain and review the application for the search warrant, which remained under seal. The district court granted that unopposed motion and postponed the trial until May 10. On February 18 the court unsealed the warrant application.

A week before trial, however, lead counsel requested another continuance and recounted his difficulties in watching the video footage recorded on April 3, 2009. According to counsel, the prosecutor had twice given him a DVD containing the videos, but neither disc worked and so Combs did not succeed in watching the

footage until April 23. After watching the videos, counsel continued, Combs had instructed him to file a motion to suppress based on perceived discrepancies between the content of the videos and the search-warrant affidavit. On May 4 the district court granted a continuance until September 20 but raised two concerns in its order. First, the court noted that "the deadline for suppression motions elapsed months ago, and to date no extension of that deadline has been secured." The court did not say whether it would be inclined to grant an extension if asked. Second, the district court reminded Combs that, if a motion to suppress was permitted, "time would have to be set aside" on the court's docket for briefing and a hearing.

After that, lead counsel waited 2-½ months to file his motion to suppress, and he never did seek leave to file it out of time. In that motion Combs argued that the application for the warrant didn't establish probable cause to believe that contraband would be found at his Madison residence. According to Combs, the video surveillance did not corroborate the affiant's assertion that Combs had received a black bag in St. Louis; on that question, said Combs, the video footage was inconclusive. Moreover, Combs continued, the affiant had omitted that the task force used a helicopter to conduct surveillance and thus, according to Combs, misled the magistrate judge into believing that he was being watched at all times "from a vantage point on the ground."

The district court denied Combs's motion, noting that the deadline for pretrial motions had passed in Janu-

ary 2010 and that counsel had never requested an extension or sought permission to file an untimely motion. The court pointed out that, when Combs was given a second continuance, defense counsel had been reminded that the motions deadline had passed but he still hadn't sought an extension to file a suppression motion. The court emphasized that it gave defense counsel "ample opportunity, subtle hints, and finally a blunt invitation . . . to seek an extension of the motion deadline," and yet counsel had done nothing. The court reasoned that it had done everything possible "to illuminate the path to properly filing a suppression motion" but could not "practice law for counsel" and, thus, given the passage of time and looming trial date, would not extend the motions deadline or the trial date.

That adverse ruling prompted defense counsel to finally seek leave to file the motion to suppress. He acknowledged that he did not have an excuse or a reasonable explanation for failing to request an extension earlier but argued that Combs should not suffer because of his mistake. Counsel pointed to several personal and professional circumstances that contributed to the delay in filing the suppression motion but conceded that these did not excuse his failure to meet the court's deadlines. The motion concludes with counsel's admission that he "quite clearly understands that the fault in this case is his" and that, although he had an obligation to carefully review the court's orders, he did not do so. The district court denied Combs's motion, concluding that there wasn't good cause for the late filing. The court also explained that there was "no way to allow a sup-

pression motion to be filed, briefed, heard, and ruled on *without* continuing the trial," which the judge already had said he wouldn't do. Combs filed a motion to reconsider the denial, which the court also denied, noting that extensions and continuances had been a "chronic problem" with counsel's firm.

Combs then entered an unconditional guilty plea. He did not reserve the right to challenge on appeal the denial of his motion to suppress.

## II.  DISCUSSION

On appeal, Combs challenges the district court's refusal to let him file an untimely motion to suppress and—for the first time—argues that the government shared the blame for his delay in filing. Moreover, he insists, the government would not have been prejudiced if the court had heard the merits of his motion.

If a defendant wishes to pursue a motion to suppress, he must do so before trial and according to the deadlines set by the district court. FED. R. CRIM. P. 12(b)(3)(C); *United States v. Mancillas*, 183 F.3d 682, 703 (7th Cir. 1999). A defendant "waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets" unless the court grants relief from the waiver for good cause. FED. R. CRIM. P. 12(e); *see United States v. Figueroa*, 622 F.3d 739, 742 (7th Cir. 2010); *United States v. Acox*, 595 F.3d 729, 731-32 (7th Cir. 2010); *United States v. Johnson*, 415 F.3d 728, 730-31 (7th Cir. 2005). Ordinarily we review for clear error a district court's discretionary decision

whether to consider an untimely motion to suppress. *United States v. Winbush*, 580 F.3d 503, 507-08 (7th Cir. 2009); *United States v. Angle*, 234 F.3d 326, 334 (7th Cir. 2000).

But in this case we must first address a problem with Combs's appeal that both parties have ignored in their briefs. When a defendant enters an unconditional guilty plea, he waives all nonjurisdictional defects arising before his plea, including Fourth Amendment claims. *See United States v. Phillips*, No. 10-2438, 2011 WL 2417092, at *2 (7th Cir. June 17, 2011); *United States v. Coil*, 442 F.3d 912, 914 (5th Cir. 2006); *United States v. Galbraith*, 200 F.3d 1006, 1010 (7th Cir. 2000). That is the rule first announced almost forty years ago in *Tollett v. Henderson*, 411 U.S. 258 (1973). There, the Supreme Court explained that a "guilty plea represents a break in the chain of events" in the criminal process because the "defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, and he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* at 267. A guilty plea thus "forecloses independent inquiry" into these pre-plea claims. *Id.* at 266. Yet the operation of this rule would force defendants who lost their pretrial motions to "go through an entire trial simply to preserve the pretrial issues for later appellate review," FED. R. CRIM. P. 11, *Notes of Advisory Committee on Rules, 1983 Amendment*, and thus Rule 11(a)(2) creates an exception allowing defendants to preserve specific pre-plea issues for appellate review if certain requirements are met.

Rule 11(a)(2) provides in part that "[w]ith the consent of the court and the government, a defendant may enter a conditional plea of guilty . . . reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." Although we have held that the writing requirement is not jurisdictional, we have not said the same about the absence of express agreement by the government and the district court. *See United States v. Rogers*, 387 F.3d 925, 933 (7th Cir. 2004). The Advisory Committee's notes make clear that a conditional guilty plea under Rule 11(a)(2) requires "unequivocal government acquiescence" and the explicit consent of the district court. FED. R. CRIM. P. 11, *Notes of Advisory Committee on Rules, 1983 Amendment; see United States v. Yasak*, 884 F.2d 996, 999 (7th Cir. 1989). The district court's approval ensures that the defendant "is not allowed to take an appeal on a matter which can only be fully developed by proceeding to trial." FED. R. CRIM. P. 11, *Notes of Advisory Committee on Rules, 1983 Amendment; see United States v. Bundy*, 392 F.3d 641, 647 (4th Cir. 2004)*. In fact, the district courts must decline to accept conditional pleas unless the appellate court's decision will effectively dispose of the case. FED. R. CRIM. P. 11, *Notes of Advisory Committee on Rules, 1983 Amendment; United States v. Markling*, 7 F.3d 1309, 1313 (7th Cir. 1993).

We have previously held that when a defendant fails to comply with these requirements and does not ensure the preservation of his issues for appellate review, we lack jurisdiction to hear those claims. *United States v. Kingcade*, 562 F.3d 794, 798 (7th Cir. 2009) (concluding that because defendant did not condition plea agree-

ment on right to appeal pre-plea motions we lacked jurisdiction to review claims); *United States v. Elizalde-Adame*, 262 F.3d 637, 640 (7th Cir. 2001) (concluding that defendant's plea was "unequivocally unconditional" and thus we lacked "jurisdiction to hear the appeal); *United States v. Cain*, 155 F.3d 840, 843 (7th Cir. 1998) (noting that, because defendant did not preserve his right to appeal suppression issue, this court did "not have jurisdiction over [that] aspect of his appeal"); *but see United States v. Robinson*, 20 F.3d 270, 273 (7th Cir. 1994) (noting that "[e]ven when a defendant pleads guilty uncondi-tionally . . . the court may review nonjurisdictional errors for plain error")*.* Typically, the jurisdictional bar is asserted by the government in response to a defendant's attempt to raise pre-plea issues after entering an uncon-ditional plea. Here, however, the government over-looked the absence of a conditional guilty plea and re-sponded to Combs's brief as if there is no question about our jurisdiction to evaluate his contentions. We raised the jurisdictional question on our own during oral argument, and the government cited *Eberhart v. United States*, 546 U.S. 12 (2005), in suggesting that, by neglecting to appreciate the significance of the fact that Combs had not entered a conditional guilty plea, it may have "waived the waiver." *Eberhart* is a part of a recent line of cases in which the Supreme Court has distinguished between jurisdictional rules and court-created "claim-processing" rules. *See, e.g., Dolan v. United States*, 130 S. Ct. 2533 (2010) (holding that 90-day deadline for sentencing court to set restitution is not jurisdictional); *Bowles v. Russell*, 551 U.S. 205 (2007) (holding that time limit in

Federal Rule of Appellate Procedure 4(a) for filing appeals in civil case is jurisdictional); *Kontrick v. Ryan*, 540 U.S. 443 (2004) (distinguishing rules governing subject-matter jurisdiction from those that are merely claim-processing rules and holding that certain filing dead-lines in Bankruptcy Rules are not jurisdictional). In *Eberhart* itself the Court held that the 7-day filing deadline applicable to motions for a new trial under Federal Rule of Criminal Procedure 33(a) is a nonjuris-dictional claim-processing rule and that the govern-ment, by failing to raise the issue of untimeliness, forfeits the defense. *Id.* at 19.

In Combs's case, the government apparently assumes that the requirements of Rule 11(a)(2) are like those in Rule 33(a). If we agree with this position, then the gov-ernment has waived its defense that Combs gave up his suppression claim by entering an unconditional guilty plea. Only the Ninth Circuit has explicitly addressed the application of *Eberhart* to Rule 11(a)(2), and in that en banc decision the court adopted the view sug-gested here by the government. *See United States v. Jacobo-Castillo*, 496 F.3d 947, 954 (9th Cir. 2007) (en banc). The defendant in *Jacobo-Castillo* had appealed his conviction after entering an unconditional guilty plea and sought to raise issues concerning preindictment delay and an unsuccessful motion to suppress. *Id.* at 950. The govern-ment did not assert the absence of a conditional plea as a ground to bar the appeal. *Id.* at 951. The majority in *Jacobo-Castillo* reasoned that the defendant's uncondi-tional plea was not a bar to appellate review because, according to the court, none of the rules of criminal

procedure, including Rule 11, is jurisdictional unless it has a statutory basis. *See id.* at 953-55. The court acknowledged the holding in *Tollett* that pre-plea nonjurisdictional issues are waived once a defendant enters an unconditional plea, but concluded that *Tollett* concerns the "*preclusive effect* to be given the plea agreement" and not the question of jurisdiction. *Id.* at 955-56. And because the government had failed to argue waiver, the en banc court concluded that appellate jurisdiction was secure and remanded the case to the panel for consideration on the merits. *Id.* at 957.

In *Jacobo-Castillo* the Ninth Circuit asserted that its understanding of Rule 11(a)(2) is bolstered by decisions from four other circuits dealing with a very different issue: whether an explicit waiver of appellate rights in a plea agreement affects the court's jurisdiction. *See United States v. Gwinnett*, 483 F.3d 200, 201 (3d Cir. 2007); *United States v. Caruthers*, 458 F.3d 459, 471-72 (6th Cir. 2006); *United States v. Story*, 439 F.3d 226, 230-31 (5th Cir. 2006); *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004). The answer is no, according to these decisions, and that is our position as well. *See Latham v. United States*, 527 F.3d 651, 653 (7th Cir. 2009); *United States v. Mason*, 343 F.3d 893 (7th Cir. 2003). But an unconditional guilty plea is very different from a defendant's bargained-for promise not to appeal, and indeed our own research has shown that one of the four circuits singled out in *Jacobo-Castillo* actually agrees with our view that the failure to preserve a pretrial issue by means of a conditional guilty plea deprives the appellate court of jurisdiction to review that issue. *See United States v. Mendez-Santana*,

645 F.3d 822 (6th Cir. 2011). Two other circuits appear to be split. *Compare Bundy*, 392 F.3d at 645, *with United States v. Garcia,* 339 F.3d 116, 118 (2d Cir. 2003). We note, too, that we are inclined to agree with the dissent's reasoning in *Jacobo-Castillo* that the question of jurisdiction is unrelated to Rule 11(a)(2) and grounded instead in Article III. As explained by Judge Callahan, a defendant's entry of an unconditional guilty plea "removes the issue of guilt from his case, rendering moot any pre-plea challenges that do not implicate the validity of the admission itself." *Jacobo-Castillo,* 496 F.3d at 957 (Callahan, J., dissenting). Under this view, an appellate court lacks jurisdiction over pre-plea claims "because of the absence of a case or controversy." *Id*.

To that we would add that Rule 11(a)(2) is unlike the timing rules addressed in *Eberhart* and its progeny because it requires the express consent of the government *and* the district court. If we accept the government's position that its oversight or acquiescence can permit a defendant to challenge an adverse ruling on a pretrial motion, then we must also countenance that the government can usurp the district court's independent right to accept or reject a conditional plea. In effect the government would read out of Rule 11(a)(2) its requirement that a plea agreement allowing for a conditional plea have the district court's blessing.

We are unwilling to overrule our own decisions and embrace the Ninth Circuit's view simply on the strength of an offhand, unbriefed reference to *Eberhart* made at oral argument. We cannot know whether the govern-

ment even is aware of our contrary decisions. In the end, though, it wouldn't matter to us whether our jurisdiction remains intact despite the unconditional nature of Combs's guilty plea. The government can forego a defense—whether by design or neglect—but we are not obligated to accept the government's waiver. *See Rogers*, 387 F.3d at 934; *United States v. Schmidt*, 47 F.3d 188, 190 (7th Cir. 1995). Neither party has offered a reason why we *should* overlook Combs's unconditional plea even if we can, nor do we see a reason to do so.

## III.  CONCLUSION

For the foregoing reasons, the appeal is DISMISSED.

CUDAHY, *Circuit Judge*, concurring in the judgment. Whatever may be the merits of the jurisdictional issue as a matter of first impression, this question appears to be controlled by relevant Seventh Circuit precedent. *See United States v. Kingcade*, 562 F.3d 794, 798 (7th Cir. 2009); *United States v. Elizalde-Adame*, 262 F.3d 637, 640 (7th Cir. 2001); *United States v. Cain*, 155 F.3d 840, 843 (7th Cir. 1998).