# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 11-1888

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ADEBISI T. ADIGUN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 4:10-cr-40033—**G. Patrick Murphy**, *Judge.*

ARGUED JANUARY 6, 2012—DECIDED DECEMBER 28, 2012

Before MANION and WILLIAMS, *Circuit Judges,* and CASTILLO, *District Judge.*[*]

WILLIAMS, *Circuit Judge.* Adebisi T. Adigun was charged with three drug offenses after officers seized crack and cocaine powder from him on two separate occasions. On the day of his scheduled trial, Adigun pled guilty in

---

[*] The Honorable Ruben Castillo, United States District Court for the Northern District of Illinois, sitting by designation.

open court and was later sentenced to 151 months' imprisonment. On appeal, Adigun argues that the district court erred by failing to suppress contraband seized from his car and by incorrectly calculating a ten-year mandatory minimum sentence. We find that Adigun waived any objection to the suppression ruling by entering an unconditional guilty plea before the district court. And though the minimum sentence should have been reduced pursuant to the Fair Sentencing Act of 2010 (FSA), we conclude that the error was harmless in Adigun's case. Therefore, we affirm the district court's sentence and dismiss the remainder of the appeal.

## I. BACKGROUND

Two arrests, separated by less than a month, led to Adigun's indictment in the current case. On March 16, 2010, Adigun was seated in the driver's seat of a van that was parked, with its engine running, in a church parking lot. A Jeep Grand Cherokee, driven by Amy Oakley, pulled into the parking lot next to the van. Officer Michael Haynes said he saw the Jeep run a stop sign and proceeded to investigate. Haynes first questioned Oakley and then walked over to the van. He asked Adigun whether an open can on the car's console contained beer. When Adigun said yes, Haynes told him to empty the contents onto the ground. While he was reaching for the beer can, Adigun dropped a plastic bag in his other hand outside the passenger window. When Haynes asked Adigun what he had thrown on the

ground, he responded, "Well, that's my girlfriend's. She likes to smoke crack." Haynes placed Adigun under arrest.

The next month, on April 7, 2010, Adigun was stopped for driving a vehicle with expired license plates. He had paid a friend to use the car and was driving with his girlfriend, Jessica Marczewski, to Chicago from his home in Herrin, Illinois. Officer Todd Zeigler approached the car to advise the occupants of the expired plate. Zeigler said he saw beer bottles missing from a six-pack and suspected Adigun and Marczewski might be drunk. He asked Adigun to accompany him to his patrol car for a driver's license check. Officer Zeigler claimed that in the patrol car, Adigun insisted that he was sober and gave him permission to search for any open alcohol containers in the car. Adigun disputes that he ever gave consent for any search. A microphone system routinely used to record traffic stops was not activated or failed to function properly so there was no recording of the alleged consent. When Zeigler searched the car, he saw cocaine powder residue in a plastic bag. A further search revealed crack cocaine lodged beneath a booster seat and Adigun was arrested.

On August 3, 2010, Adigun was charged in a three-count indictment with conspiracy to distribute and possession with intent to distribute crack and powder cocaine, aided and abetted by Marczewski. Marczewski entered into a cooperating plea agreement with the government. Adigun moved to suppress evidence seized in the March 16 and April 7 arrests. As to the March 16 seizure, the district court denied the motion. With

respect to the April 7 seizure, the district court initially granted the motion after hearing testimony from Officer Zeigler and Adigun. The court reasoned that without evidence beyond Zeigler's contested account, the government could not meet its burden of proof that Adigun consented to the search over the defendant's testimony that he had not.

A week before the October 19, 2010 trial was set to begin, Adigun filed a supplemental motion to suppress Marczewski's testimony as fruit of the April 7 seizure. In responding to the supplemental motion, the government asked the court to reconsider its prior suppression ruling under a new theory: that Adigun had no standing to challenge the search because he was driving a borrowed car beyond the scope of permission and had not established a reasonable expectation of privacy. On October 15, the district court agreed and vacated its suppression ruling on the April 7 seizure, permitting all of the evidence to come in against Adigun. The district judge also found that Adigun lacked credibility due to inconsistent testimony between the first and second evidentiary hearings.

The morning of trial, Adigun asked for a continuance and a new lawyer. He said that after the court reversed its ruling on the April 7 seizure, disagreements had arisen with his counsel about how to proceed. Adigun believed his counsel was not prepared for trial given the recent setback. He said: "I just don't think that my counsel is ready at this time, and . . . his perspective

on appeal to the output of the trial, I don't think, is in my best interest."

Adigun's attorney advised the court that he was prepared to try the case whether or not evidence from the April 7 seizure was suppressed. But he noted that he had already recommended that Adigun plead guilty both before and after the district court vacated the suppression ruling. When the April 7 seizure had been suppressed, the government had been willing to recommend a sentence of 24 to 30 months. Although he left the final decision up to his client and would vigorously try the case, Adigun's counsel said he had strongly recommended accepting the initial offer.

The judge denied the continuance and the request for new counsel, advising Adigun that his attorney had a reputation for excellent work. He told the defendant, "the jury is here, and I'm going to give you plenty of time, a little more time, but I'm not going to inconvenience those jurors. . . . So make up your mind one way or the other. The court has no interest in how you decide it, but you're going to have to make a decision. I've got my stopwatch on." After speaking with his sister during a 15-minute recess, Adigun agreed to plead guilty.

The district court described the charges in the indictment, verified Adigun's competence and education level, advised Adigun of his right to proceed to trial and the rights he would be waiving by pleading guilty. The judge stated, "I'm also told by my clerk that this is an open plea." Adigun's counsel replied, "It is an open plea. The government has agreed to a few concessions." One

such concession was that "the Fair Sentencing Act will apply with respect to the Guidelines in this matter, the 18-to-1 ratio. Obviously, it doesn't affect any mandatory minimums." After the court described the factual basis for the charges in the indictment, Adigun admitted that the facts as described were true and entered a guilty plea.

At sentencing, the district court sustained several of Adigun's objections to the PSR and adopted his calculation of drug quantity over that offered by the probation officer. An 18-to-1 crack-powder ratio under the FSA yielded a Guideline range of 151 to 188 months' imprisonment. The court then set a mandatory minimum sentence of 120 months. Adigun sought a below-Guideline sentence at the 120-month minimum while the government requested a within-Guideline sentence of 151 months. The district court weighed sentencing factors under 18 U.S.C. § 3553(a) and rejected a downward variance because the crime was serious and Adigun was "dishonest," "manipulative," and "very dangerous." For these reasons, the court determined, "I think this is a Guideline sentence" and adopted the government's recommendation of 151 months' imprisonment. Adigun brought this appeal.

## II. ANALYSIS

### A. Adigun's Unconditional Guilty Plea

Adigun asks this court to review the suppression rulings made by the district court before his guilty plea.

But there is an immediate and obvious barrier to his appeal. An unconditional guilty plea precludes challenge to the denial of a motion to suppress because the "guilty plea constitutes a waiver of non-jurisdictional defects occurring prior to the plea. . . . This waiver includes Fourth Amendment claims." *United States v. Cain*, 155 F.3d 840, 842 (7th Cir. 1998) (citations omitted); *see also United States v. Herrera*, 265 F.3d 349, 351 (6th Cir. 2001) ("It is elemental that a guilty pleading defendant may not appeal an adverse pre-plea ruling on a suppression of evidence motion unless he has preserved the right to do so by entering a conditional plea of guilty . . . ."). Adigun has argued that his guilty plea should be construed as conditional, preserving the right to appeal the district court's suppression rulings.

The Federal Rules of Criminal Procedure permit a defendant to enter a conditional plea of guilty under specific circumstances: The district court and the government must both consent and the defendant must "reserv[e] in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." Fed. R. Crim. P. 11(a)(2). Here, Adigun pled guilty in open court and there is no written plea agreement identifying the pretrial rulings preserved for appeal.

In *United States v. Yasak*, we permitted a conditional plea without a written agreement on the basis of representations in the plea transcript. 884 F.2d 996, 1000 (7th Cir. 1989). But here we must reach the opposite conclusion—that Adigun's plea was unconditional. Defense

counsel stated that Adigun was entering an "open plea" and there is no indication in the record of any issues preserved for appeal. Even if the full colloquy were ambiguous, we could not infer a conditional plea from the record. "When there is no special written reservation of the right to appeal, the parties' statements regarding the plea are ambiguous, and the government declines to assent to an appeal, there is not a valid conditional plea under Fed. R. Crim. P. 11(a)(2)." *Id.* at 999. Rule 11(a)(2) requires "unequivocal government acquiescence." *Id.* (internal quotation marks and citation omitted). Here, unlike *Yasak*, there is no evidence of any prosecutors' agreement to a conditional plea, nor assent to this appeal, nor waiver of the writing requirement. There is also no indication that the district court agreed that any pretrial issues be preserved for appeal, an independent requirement under Rule 11(a)(2). Nor does the record indicate which rulings would be preserved, a particular problem since Adigun filed five different suppression motions related to the March 16 and April 7 seizures. At oral argument, defense counsel ultimately conceded that Adigun's guilty plea was unconditional.

Adigun further argues that, however the plea is characterized, we can infer from the record that he only pled guilty because he *believed* he was preserving a right to appeal the suppression rulings. Adigun cites *United States v. Carrasco*, 786 F.2d 1452, 1455 (9th Cir. 1986), *overruled on separate grounds in United States v. Jacobo Castillo*, 496 F.3d 947 (9th Cir. 2007) (en banc), for the proposition that the purported ambiguity regarding appellate review should permit him to "plead anew." We

cannot agree. In *Carrasco*, it was uncontested that the government had initially offered the defendant a conditional plea agreement which it later withdrew after choosing not to dismiss a separate count in the indictment. The defendant filed notice with the court that she would still enter a conditional guilty plea to the first count. The Ninth Circuit concluded that the plea was, in fact, unconditional because there was no clear consent from the government or district court to the modified, partial agreement. Nevertheless, the *Carrasco* court chose to vacate the plea entirely because it was impossible to determine on that record whether the defendant knew she was waiving her ability to appeal her pretrial issues, even though she was aware that the government had withdrawn its initial offer of a conditional plea agreement.

The facts in this case are plainly distinct. There is no evidence whatsoever that the government ever offered Adigun a conditional plea agreement. To the contrary, the record suggests that Adigun was consciously waiving his rights, quite unlike *Carrasco*. Adigun appears to have disagreed with his counsel over the importance of preserving a right to appeal the suppression rulings. He told the district court that his counsel's "perspective on appeal to the output of the trial, I don't think, is in my best interest." But, he later pled guilty *despite this*

*disagreement*, after both the district court and his counsel advised him he could freely proceed to trial.[1]

We have previously held that the trial court is not obligated to inform defendants of the consequences of an unconditional plea on a potential appeal. *United States v. Fisher*, 772 F.2d 371, 375 (7th Cir. 1985). Neverthe-

---

[1] Adigun has not directly challenged his counsel's effectiveness in advising him to enter an unconditional guilty plea. But we note that it would likely be difficult to establish attorney incompetence on this record. "A conditional plea is not just the defendant's choice." *United States v. Alvarez-Quiroga*, 901 F.2d 1433, 1437 (7th Cir. 1990). Here, as in *Alvarez-Quiroga*, "[t]here was no reason for the government or the court to accept a conditional plea offer even if one had been made." *Id.* The government had already prepared for trial and the likelihood of conviction would have been quite high after the district court admitted physical evidence from the arrests. Adigun could have independently decided to proceed to trial and challenge the suppression rulings if he were convicted. But he chose not to. Furthermore, the underlying merits of Adigun's Fourth Amendment objections are far from obvious. The district court vacated the suppression of the April 7 evidence in part because it found Adigun untrustworthy and no longer credited his account of the arrest. Appellate courts typically defer to such credibility judgments by a trial court. And Adigun's argument that the March 16 stop was a non-Mirandized detention and interrogation is tenuous at best. Advising a client to plead guilty under such circumstances is well "within the range of competence demanded of attorneys in criminal cases." *Id.* (citation omitted).

less, many lay defendants do not recognize the effect a plea can have on appellate review of alleged constitutional errors. For this reason, many district courts explicitly inform defendants that they are waiving the right to appeal pretrial rulings. Though we conclude that Adigun voluntarily entered an unconditional plea, it would have been preferable for the district court to have expressly advised him of the full extent of the waiver. That would have eliminated further controversy on the matter.

### B. Right to Challenge Adverse Suppression Rulings Was Waived

Because Adigun's plea was unconditional, the government asserts that this court has no subject-matter jurisdiction to review the district court's suppression rulings. This was our conclusion in *United States v. Combs*, 657 F.3d 565, 571 (7th Cir. 2011) (per curiam), *cert. denied*, ___ U.S. ___, 132 S. Ct. 2373 (2012). Adigun cites contrary authority from *United States v. Robinson*, where we stated that "[e]ven when a defendant pleads guilty unconditionally or fails to object at sentencing, the court may review non-jurisdictional errors for plain error." 20 F.3d 270, 273 (7th Cir. 1994). Adigun asks us to reject *Combs* and apply plain error review to the district court's suppression rulings pursuant to *Robinson*.

*Robinson* is something of an outlier within this circuit. Beyond *Combs*, other cases have rejected appellate jurisdiction over pretrial rulings following an unconditional

guilty plea. *See United States v. Kingcade*, 562 F.3d 794, 798 (7th Cir. 2009); *United States v. Elizalde-Adame*, 262 F.3d 637, 640 (7th Cir. 2001); *United States v. Cain*, 155 F.3d 840, 843 (7th Cir. 1998); *see also United States v. Gaertner*, 583 F.2d 308, 311 (7th Cir. 1978) (finding defendant's "speedy trial claim . . . not open for our review after pleas of guilty").[2] Even so, some of our sister circuits have diverged on this issue and exercised jurisdiction in cases involving unconditional pleas (or plea agreements with appellate waivers). *See United States v. De Vaughn*, 694 F.3d 1141, 1155-58 (10th Cir. 2012); *United States v. Cheney*, 571 F.3d 764, 769 (8th Cir. 2009); *United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc); *United States v. Garcia*, 339 F.3d 116, 118 (2d Cir. 2003). Adigun urges us to resolve the precedent in his favor and review the district court's suppression rulings for plain error. But we do not believe that any of these cases supports Adigun's position. We think the tension in precedent both within and outside of our circuit arises, in part, from varying language used to describe the doctrines of waiver, forfeiture, and subject-matter jurisdiction.

Though waiver and forfeiture are related, the terms have sometimes been used interchangeably, which can lead to confusion. The difference is that "forfeiture is the failure to make the timely assertion of a right, [whereas]

---

[2] *But see United States v. Dvorak,* 115 F.3d 1339, 1346 (7th Cir. 1997) (relying on *Robinson* to apply plain error review to upward sentencing departure).

waiver is the intentional relinquishment or abandon-
ment of a known right." *United States v. Olano*, 507 U.S.
725, 733 (1993) (internal quotation marks and citation
omitted). So forfeiture is characterized by a negligent
or accidental omission while waiver involves a party's
intentional (and often strategic) choice not to invoke a
right. Despite the differences, the Supreme Court has
acknowledged that the two terms have been conflated in
its own case law and by other courts. *See id.*; *see also
Freytag v. C.I.R.*, 501 U.S. 868, 894 n.2 (1991) (Scalia, J.,
concurring) (observing that waiver and forfeiture "are
really not the same, although our cases have so often
used them interchangeably that it may be too late to
introduce precision"); *see also United States v. Richardson*,
238 F.3d 837, 841 (7th Cir. 2001) (describing dual use of
the term "waiver").

Though the terms can be confused, the procedural
effects of forfeiture and waiver are very different. In
cases of forfeiture, Rule 52(b) of the Federal Rules of
Criminal Procedure permits "plain error" to be "consid-
ered even though it was not brought to the court's atten-
tion." But Rule 52(b) does not apply to waivers because
a waiving party has already made a conscious choice not
to invoke the right, thereby removing the issue from
controversy. *See Olano*, 507 U.S. at 733 ("waiver . . .
extinguish[es] an 'error' under Rule 52(b)"); *United States
v. Harris*, 230 F.3d 1054, 1058-59 (7th Cir. 2000) ("[W]e
cannot review waived issues at all because a valid
waiver leaves no error for us to correct on appeal.").

We note that *Robinson* cited Rule 52(b) when concluding that plain error review applies "[e]ven when a defendant pleads guilty unconditionally or *fails to object* at sentencing . . . ." 20 F.3d at 273 (emphasis added). So *Robinson* employed the word "waiver" to mean *forfeiture* (under the more precise terminology). *See also id.* (characterizing waiver as "fail[ure] to raise a sentencing challenge before the sentencing court").

An unconditional guilty plea is not ordinarily considered a forfeiture. It is a knowing, voluntary relinquishment of the defendant's right to go to trial and contest the factual basis of an indictment. In other words, the unconditional plea is a true waiver. An opposing party can "waive waiver" if it fails to assert the preclusive effect of the waiver before the appellate court. *See Combs*, 657 F.3d at 569 (discussing this principle); *United States v. Doe*, 239 F.3d 473, 474-75 (2d Cir. 2001). But in *Robinson*, it does not appear that the government asserted on appeal the preclusive effect of the defendant's unconditional plea. Therefore, the court treated the issue as forfeited and reviewed the merits under the plain error standard used for the defendant's forfeited sentencing objections.

The critical difference in *Robinson*'s analysis is that the court exercised jurisdiction under those circumstances, whereas *Combs* declined to do so. *Combs* concluded that even when the government fails to assert the waiver effect of a defendant's unconditional plea, the appellate court has an independent obligation to reject the appeal because it no longer has subject-matter

jurisdiction. 657 F.3d at 571. No party can waive or forfeit a lack of subject-matter jurisdiction, "which we must enforce even if everyone else has ignored it." *United States v. Smith*, 438 F.3d 796, 799 (7th Cir. 2006). *Combs* held that an unconditional guilty plea resolves the issue of factual culpability, relying on *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). After an unconditional plea, *Combs* reasoned, the court has no jurisdiction over pre-plea claims because there is no longer a case or controversy under Article III of the Constitution.

As noted above, other circuits have disagreed with us on this question. They treat an unconditional plea as a procedural waiver, which can in turn be waived or forfeited by the government, and interpret *Tollett* as addressing the preclusive effect of a guilty plea rather than subject-matter jurisdiction. *See De Vaughn*, 694 F.3d at 1155-58 (declining to follow *Combs*); *Jacobo Castillo*, 496 F.3d at 955-56. But even if we felt it necessary to revisit our precedent as Adigun urges, we do not believe this case presents a proper occasion to do so. Whether the bar is jurisdictional or procedural, the government has invoked it by asserting the preclusive effect of Adigun's unconditional plea. The government did not waive or forfeit the issue as it did in *Robinson*, *Jacobo Castillo*, and *De Vaughn*. No case in any circuit permits review when a defendant's waiver has been asserted by the govern-

ment. So there is little need to resolve any tension in precedent here. We therefore conclude that we cannot review Adigun's Fourth Amendment claims.

### C.  The Error in Adigun's Mandatory Minimum Sentence Was Harmless

Adigun objects to the district court setting a ten-year mandatory minimum sentence based on the quantity of crack cocaine he possessed and distributed. The district court arrived at the minimum sentence by applying then-controlling precedent from *United States v. Fisher*, 635 F.3d 336, 340 (7th Cir. 2011), a decision that has since been reversed, *Dorsey v. United States*, ___ U.S. ___, 132 S. Ct. 2321 (2012). Although Adigun committed his offenses (in part) before passage of the FSA, *Dorsey* now confirms that the lower mandatory minimums apply to all defendants sentenced after August 3, 2010. *Id.* at 2336. Under *Dorsey*, the district court's application of a ten-year mandatory minimum was error and Adigun's minimum sentence should have been five years.

The government asserts, however, that any error as to the minimum sentence is harmless given the reasons the district court gave for the sentence. We agree. An error is harmless if it "did not affect the district court's selection of the sentence imposed." *Williams v. United States*, 503 U.S. 193, 203 (1992); *United States v. Anderson*, 517 F.3d 953, 965 (7th Cir. 2008). Here, the trial court weighed the seriousness of Adigun's crime and rejected his motion for a downward variance after finding Adigun to be "dishonest," "manipulative," and "very

dangerous." The court expressly concluded, "this is a Guideline sentence," and selected 151 months from the correctly calculated range of 151 to 188 months. Adigun does not object to the calculation of his Guideline range, which incorporated the FSA's 18-to-1 crack-powder ratio. And here, the entire Guideline range was above the erroneously calculated ten-year minimum.

We are not saying that an error setting a mandatory minimum will automatically be harmless if a district court imposes a sentence above that minimum. But on this record, we conclude that the error had no effect on the sentence the district court selected.

## III. CONCLUSION

Because we find that the error in Adigun's minimum sentence was harmless and that we cannot review his other claims, we AFFIRM the district court's sentence and DISMISS the remainder of this appeal.

MANION, *Circuit Judge*, concurring. I concur with the result of the case and the court's reasoning in II.A and II.C. However, I differ somewhat from the court's analysis of *United States v. Robinson*, 20 F.3d 270 (7th Cir. 1994), and

*United States v. Combs*, 657 F.3d 565 (7th Cir. 2011) (per curiam), in Part II.B. As I see it, *Combs* and *Robinson* are compatible and share a common rule.

In *Combs*, the defendant pleaded guilty, but later objected to the submission of evidence with a motion to suppress. 657 F.3d at 566. Typically, issues about a motion to suppress would be deemed "waived" by an unconditional guilty plea, but the government did not make this argument on appeal. *See id.* at 568-69. Nonetheless, we ruled that the guilty plea "removes the issue of guilt from this case, rendering moot any pre-plea challenges that do not implicate the validity of the admission itself." *Id.* at 571 (quoting *United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc) (Callahan, J., dissenting)). Because the defendant's pre-plea claims were moot, the claims no longer included a case or controversy, and we therefore lacked Article III jurisdiction over those claims. *Id.*

Therefore, *Combs* stated our rule on the extent of the waiver that results from an unconditional guilty plea: If a defendant enters an unconditional guilty plea, the defendant waives—and we therefore lack jurisdiction over—claims that: (1) occurred pre-plea; (2) do not challenge the validity of the plea; and (3) do not challenge the jurisdiction of the courts (which parties are not allowed to waive regardless of a plea). *See id.*; *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Phillips*, 645 F.3d 859, 862-63 (7th Cir. 2011).

Although *Robinson* did not explicitly apply the rule discussed in *Combs*, the issues reviewed on appeal in *Robinson* are nonetheless consistent with *Combs*. The

defendant in *Robinson* entered an unconditional guilty plea, but made a variety of arguments on appeal. 20 F.3d at 273-79. These arguments can be categorized as (1) challenges to the defendant's sentence (Parts II, V, VI, VII, VIII, and IX); (2) challenges to the validity of the guilty plea (Parts III and IV); and (3) a challenge to the jurisdiction of the federal court (Part X). *Id.* The first category of challenges addressed the defendant's sentencing—which occurred after the plea had been entered. *Id.* The second category of challenges attacked the validity of the guilty plea—whether undesired counsel forced the plea on the defendant and whether the government breached its plea agreement. *Id.* at 275-76. Finally, the third category challenged the jurisdiction of the federal court to hear a case by a bank that allegedly lacked federal insurance. *Id.* at 279. Under the rule stated in *Combs*, we had jurisdiction over these claims.

Although the defendant's guilty plea in *Robinson* had not waived the issues on appeal, the defendant had not raised many of these issues before the district court. *Id.* at 273. We determined that we could review these issues for plain error under Fed. R. Crim. P. 52(b). *Id.*

In this case, Adebisi T. Adigun's challenges clearly fall under *Combs*, and not *Robinson*. Adigun's claim challenged the evidence supporting his guilt. This issue occurred pre-plea, and does not attack the validity of the plea or the jurisdiction of the federal court. We therefore lack jurisdiction over this claim because Adigun's unconditional guilty plea waived it.